### C. W. WHITE v. MATADOR LAND AND CATTLE COMPANY.
#### No. 2648.

1. **Executory Contract for Delivery of Personal Property.**—See written contract, supplemented by testimony to the circumstances of its execution, held together to constitute a contract for the delivery of a given number of horses at a stipulated place and price.

2. **Measure of Damages—Contract of Sale.**—The measure of damages for refusal to accept personal property tendered under contract for sale, ordinarily is the difference between the contract price and the market price at the time and place for the delivery with interest.

3. **Same—Disposition of the Property.**—If the seller retain the property so refused, he can take the property to another market at expense of the party refusing it, for the purpose of sale, if necessary to make sale of it, the net proceeds of such sale chargeable to him; his damages being the difference between such net proceeds and the contract price.

APPEAL from Tarrant. Tried below before Hon. R. E. Beckham. The opinion states the case.

*J. A. Holland,* for appellant, cited 1 Add. on Con., p. 723; Chitty on Con., 9 ed., par. 769; Abbott's Trial Ev., pp. 308, 309; Gillett v. Hearne, 62 Texas, 23; James v. Adams & Wicks, 64 Texas, 193.

HOBBY, JUDGE.—The plaintiff, C. W. White, brought this suit in the District Court of Tarrant County against the Matador Land and Cattle Company and H. H. Campbell (there was a dismissal as to Campbell), and alleged that H. H. Campbell, as agent of said company, entered into the following contract in writing:

"FORT WORTH, TEXAS, March 15, 1884.

"This agreement, made this day by and between C. W. White and H. H. Campbell, for the Matador Land and Cattle Company, is to the following effect:

"That whereas C. W. White has between (85) eighty-five and (100) one hundred head of saddle horses in a pasture near the town of Henrietta, which have been examined by the said Campbell, agent, and said Campbell having decided to take a certain lot of said horses, it is hereby agreed and understood that the said Campbell is to receive the said horses between the 1st and 5th of April following, and is to be allowed to cut back all horses not desired, and he hereby agrees to take all the remainder and pay therefor the sum of $55 per head for the same at the time of receiving.

"Signed this the 15th day of March, 1884.

"C. W. WHITE.
"H. H. CAMPBELL,
"For the Matador Land and Cattle Company."

A full compliance with the contract by plaintiff and a breach thereof by defendant was alleged, and the damages laid at the sum of $1814.

The evidence before the court was that the contract was made on March 15, 1884, at Fort Worth. From 85 to 100 head of horses were sold to defendant at the contract price of $55 per head. They were examined by the agent before the contract was made, who reported them all right, and that they would be accepted, except 8 or 10 which were rejected or cut back, and that privilege was inserted in the contract. They were to be delivered between the 1st and 5th of April, 1884, at the pasture about three miles from Henrietta, Texas. On the 5th of April the company's agent came to the pasture and refused to take them. He assigned no reason for such refusal. The horses were ready for delivery. They were kept in the pasture from 15th of March, 1884, to 5th of April, 1884, as per contract. After the refusal to accept them they were kept until June 1, 1884, in the same place, at an expense of $250. Plaintiff tried hard during that time to sell them; could not; moved them to Abilene and Waco at an expense of $251.60, where he sold them. Abilene is about 200 miles from Henrietta. Twenty-two head shipped to Waco sold for $40 per head; fifty-three of those shipped to Waco sold for $30 per head. The market value of the horses at the time of the sale to the cattle company was good. There was no demand at the time fixed for delivery for horses. The market value at Waco and Abilene was $30 and $40 per

head.   The decline in the value between the time of sale to defendant
and the sale at Waco and Abilene was from $15 to $20 per head.

There was evidence that when the defendant's agent went to the pas-
ture near Henrietta to get them, the horses, if they were suitable, he
found none of them in a condition for delivery and did not accept them.

Campbell testified that he was superintendent of the cattle company,
and made the contract with White for the company; had bought horses
for the company every year before, which the company accepted and
paid for.   The company had never refused to ratify any contract made
by him.

The court found that Campbell was the agent of the company, author-
ized to and did make the contract with the plaintiff as already set forth;
that plaintiff kept the horses in his pasture near the town of Henrietta
until April 5, 1884.   That defendant sent an agent to inspect the horses,
who, upon inspection, desired none, and declined to take them; that the
expense to plaintiff for pasturing the horses was $154; that plaintiff,
being unable to sell at the price named in the agreement, shipped the
same to Abilene at a cost of $164, and subsequently sold 63 head at $40
per head and 22 head at $30 per head; that there was no evidence of the
market value of the horses at Henrietta, the place of delivery, if accepted
by defendant; that the term "cut back," used in the contract, was ad-
mitted to mean "to reject."

The conclusions of law upon these facts were:   That by the terms of
the agreement defendant had the right to reject any number of the
horses mentioned, upon further inspection, and that by said terms the
defendant was under no obligation to take any number of horses; that
there was no evidence of market value of the horses at the time and
place of delivery, and nothing upon which damage to plaintiff could be
estimated, even if the defendant under the agreement was bound to
receive any number of the horses; and that the plaintiff was not entitled
to recover.

Judgment was rendered in favor of the defendant, from which plaintiff
appeals.

The errors assigned are:   "First—The court erred in giving judgment
for the defendant."

The proposition under this assignment is, that if the contract was
broken by appellee the appellant would be entitled to nominal damages,
if it be admitted that the evidence failed to show what the market value
of the property was at the place of delivery.   And further, if there were
no sales at the place of delivery, evidence of the market value at other
places would be sufficient under the facts of this case.

Second assignment of error—"The court erred in its conclusions of
fact, in that the evidence showed that a certain lot of the horses had

already been decided to be taken when the contract was reduced to writing."

Third assignment of error—"The judgment of the court is contrary to the law, and not supported by the evidence, because one clause in the contract is made to destroy all the rest."

The legal conclusion found by the court from the facts, to the effect that the defendant was authorized to reject all of the horses upon a subsequent inspection, and was under no obligation to accept any of them, seems to be predicated upon the written contract exclusively. We are not prepared to say that this construction of the instrument is correct. If so, however, we do not think that when it is read in the light of the plaintiff's testimony it supports the finding referred to. Looking to the agreement as supplemented by the other evidence, it seems clear that the lot of horses (85 or 100) in plaintiff's hands was examined by defendant, and a certain number of them agreed or decided to be taken by him. This number is ascertained by plaintiff's evidence to be the lot so examined, except ten, which were rejected or "cut back." It appears further that. April 5, 1884, was the time, and plaintiff's pasture near Henrietta the place, of delivery. The contract price of the horses accepted was $55 per head. These facts make a case of an executory contract for the sale of personal property, requiring a subsequent acceptance of the property by the purchaser. The rule as to the measure of damages for the failure of the vendee to receive the property contracted for, is ordinarily the difference between the contract price and the market value at the time and place of delivery, with interest. 2 Suth. on Dam., pp. 359, 365, and cases. cited.

"Where the vendor retains possession of the property and the purchaser refuses to receive it, the vendor is the agent of the vendee—at least he may elect to so consider himself and proceed to resell the property, or any part thereof, which the vendee refuses to receive; and the latter is chargeable with any difference in the price agreed to be paid by him and the actual sum realized on a resale which was fairly conducted, if less than the contract price." Field on Dam., sec. 298.

The market value may be arrived at by a resale of the property within a reasonable time after notice, etc., using all proper means to secure a fair sale; nor is the market value restricted to the place of the breach of contract. The vendor may transport the property to another place, at the expense of the vendee, for a market. The plaintiff is not confined to any particular species of evidence for the purpose of showing his loss from the breach of the contract in proving the value at the place of delivery. In the absence of a market at such place, the value may be shown by proof of the market price at the nearest point where property of a like character could be bought and sold, with addition of cost of transportation. 2 Suth. on Dam., p. 373; Field on Dam., p. 248.

Applying these principles to the present case, we are of opinion that the recovery of plaintiff would be based upon the number of horses shown by the evidence to have been examined and accepted by the agent Campbell at the time of the execution of the contract, and which the defendant refused to receive at plaintiff's pasture on April 5, 1884; that he would be entitled to recover as the measure of damages the difference between the contract price agreed to be paid for such horses and the net proceeds realized from the sale of the same at the nearest market to the place of delivery, as shown by the evidence.

We think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted December 10, 1889.