**F. C. PENNINGTON PRODUCE CO. v. BROWNING. (No. 506.)**

Court of Civil Appeals of Texas, Waco. April 7, 1927.

Rehearing Denied April 28, 1927.

1. Sales ⬦⮞202(6)—Where draft is attached to bill of lading, buyer is not entitled to possession of goods prior to payment.

Though delivery of merchandise to common carrier to be transported at purchaser's expense, vests title, purchaser is not entitled to possession without seller's consent, where draft is attached to bill of lading for contract price.

2. Sales ⬦⮞332, 339—Seller attaching draft to bill of lading could sell property on notice after buyer's refusal thereof and recover difference between contract and resale price.

Where seller, consigning goods, attached draft to bill of lading for contract price, seller retained lien on property as security, entitling him to make resale on notice after buyer's refusal to accept, and to recover difference between contract price and price realized after deducting reasonable and necessary expense incurred.

3. Sales ⬦⮞339—Evidence held to sustain recovery in seller's action against buyer for difference between contract and resale price of turkeys after buyer's refusal.

In action by seller of turkeys to recover difference between contract price and resale price after buyer had refused acceptance, evidence held· to sustain seller's recovery.

⬦⮞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Contracts ⊜⟶176(1)—Intention is question of fact determinable from evidence and circumstances.**

Intention of parties is question of fact to be determined from evidence and consideration of circumstances.

**5. Banks and banking ⊜⟶127—Bank's purchase of drafts drawn on buyer held not conclusively shown by acceptance, crediting seller's account, and forwarding drafts for presentment.**

In action by seller against buyer to recover difference between contract and resale price of goods refused, fact that bank accepted drafts drawn on buyer for payment, credited seller's account, and forwarded drafts for presentment and payment, *held* not conclusive proof that drafts were purchased, rather than merely taken for collection.

**6. Sales ⊜⟶339—Evidence held to support finding that bank accepted drafts for collection only, not impairing seller's right in action against buyer for damages.**

In action by seller to recover difference between contract and resale price of goods refused, evidence *held* sufficient to support finding that bank merely accepted drafts drawn on buyer for collection, not impairing plaintiff's right to recover.

**7. Appeal and error ⊜⟶931(3)—Findings supported by evidence are implied to sustain judgment.**

Findings are implied to sustain judgment where supported by evidence.

**8. Sales ⊜⟶339—Seller, required to resell goods at loss, could recover against buyer, regardless of whether drafts had been purchased by bank to which bill of lading was delivered (Negotiable Instruments Act, § 61 [Rev. St. 1925, art. 5936]).**

Where buyer rejected goods and seller was required to sell elsewhere at loss, seller was entitled to recover difference between contract and resale price, regardless of whether drafts drawn on buyer were sold to bank to which bill of lading was delivered as seller was liable to bank under Negotiable Instruments Act, § 61 (Rev. St. 1925, art. 5936), and no contractual relation existed between buyer and bank.

**9. Appeal and error ⊜⟶218(2)—Reversal could not be granted for failure to submit issues, though instruction was objected to where no charges were submitted or requested (Rev. St. 1925, art. 2190).**

Failure of court to submit certain issues involved *held* not reversible error, where such issues were not prepared and presented to court with request for their submission, though charge given was objected to on account of their omission, under Rev. St. 1925, art. 2190, providing failure to submit issues is not ground for reversal unless submission has been requested in writing.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by W. M. Browning, doing business under the name and style of W. M. Browning & Co., against the F. C. Pennington Produce Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Dial & Brim, of Sulphur Springs, and Wear & Wear, of Hillsboro, for appellant.

Morrow & Stollenwerck, of Hillsboro, for appellee.

GALLAGHER, C. J. Appellee W. M. Browning, doing business under the name and style of W. M. Browning & Co., sued appellant Pennington Produce Company in the district court of Hill county to recover damages for an alleged breach of contract for the purchase of two carloads of dressed turkeys from him. The parties will be designated as in the trial court. The breach alleged consisted of defendant's failure to accept said turkeys and pay for the same. Defendant pleaded its privilege to be sued in the county of its residence, and plaintiff controverted the same and alleged that defendant was a corporation and that the cause of action sued on, or a part thereof, arose in said Hill county, in that said contract was made in Hill county and that the same was to be performed and was in fact performed in said county. By agreement of the parties, the plea of privilege was tried with the case. The case was submitted to a jury on special issues, which issues and the answers of the jury thereto were as follows:

"(1) Did the plaintiff and the defendant enter into the contract of sale and purchase in question? Answer: Yes.

"(2) Did the plaintiff, in making resale of the turkeys in question, exercise reasonable diligence to secure the best price obtainable at the nearest and best market? Answer: Yes."

Neither party requested the submission of any other or further issues. The court overruled defendant's plea of privilege and rendered judgment in favor of the plaintiff against the defendant for the sum of $6,399.37, which was the difference between the contract price of said turkeys and the net proceeds received from the resale of the same, with interest from that date to the time of trial. From said judgment the defendant has appealed. So much of the pleadings of the parties and of the evidence introduced as may be necessary to a full understanding of each issue of law discussed in the opinion will be recited in connection therewith.

*Opinion.*

Defendant presents as grounds for reversal fourteen propositions. All said propositions, however, may be divided into three separate groups, and they will be so considered.

Defendant contends by one of said groups of propositions that plaintiff's pleadings allege, and that the evidence introduced shows, a completed or executed contract, under

which title to said turkeys vested· in it, and that plaintiff for that reason cannot maintain a· suit· for damages for breach of contract. Based ·on this contention, it presented a general demurrer to plaintiff's petition, which was overruled. It also at the close of the evidence requested the court to instruct the jury to return a verdict in its favor, which request was refused. Plaintiff alleged, and the evidence showed, that defendant bought from him two carloads of dressed turkeys to be delivered in cars at Hillsboro; that defendant requested that the same be shipped to New York to plaintiff's order; that he told plaintiff he would send a man to Hillsboro to take up the bills of lading and pay for the turkeys; that plaintiff shipped the turkeys to New York as directed; that defendant subsequently instructed him to attach the bills of lading to drafts on Hugo Josephey & Co., New York, and to forward the same for presentation to and payment by said Josephey & Co.; that plaintiff did so, forwarding said drafts through the Farmers' National Bank of Hillsboro; that Josephey & Co. refused to pay said drafts; that defendant was advised of such fact, and then claimed that the turkeys were rotten and declined to receive and pay for same or to cause the same to be done by any one; that plaintiff immediately went to New York and made a thorough examination of said turkeys and found them in sound, marketable condition; that he then advised defendant that he would sell said turkeys for its account and hold it responsible for the loss sustained and expense incurred. The damages alleged and proved in this suit were the difference between the contract price and the amount realized from the sale of said turkeys, after deducting the cost of transporting them from Hillsboro to New York and the expense incurred in making such sale. The gist of defendant's contention seems to be that the delivery of said two carloads of turkeys to a common carrier in accordance with said contract of sale and purchase vested in it the title thereto, and that thereafter plaintiff's only remedy was to sue for the contract price.

[1] In the absence of circumstances indicating a contrary intention, the general rule seems to be that the delivery of merchandise to a common carrier, to be transported at the expense of the purchaser to some point selected by him, vests in such purchaser title to such property, notwithstanding the same may be consigned to the seller or his order and the bill of lading attached to a draft on the purchaser for the contract price. In such cases the purchaser is not entitled to possession, without the consent of the seller, until he has paid such draft. Robinson & Martin v. Houston & Texas Central R. R. Co., 105 Tex. 185, 187, 146 S. W. 537; Farmers' Rice Milling Co. v. Standard Rice Co. (Tex. Com. App.) 276 S. W. 904, 905, 906; Scott & May-

hall v. Lubbock Grain & Coal Co., 113 Tex. 127, 130, 252 S. W. 164; Hamilton Mill & Elevator Co. v. Rayford (Tex. Civ. App.) 255 S. W. 1017, 1018.

[2, 3] The seller in such cases has a lien on the property to secure the purchase price and the right to retain possession thereof until the price has been paid, notwithstanding title thereto may have passed to the purchaser. One of the remedies provided by law for the protection of the seller where the purchaser refuses to accept the property and to pay the draft for the purchase price thereof, is the right, after due notice to the purchaser, to resell the property for the best price obtainable and to recover the difference between the contract price and the price realized by the sale after deducting the reasonable and necessary expense incurred in connection ·therewith. Waples· v. Overaker & Co., 77 Tex. 7, 10, 13, 13 S. W. 527, 19 Am. St. Rep. 727; White v. Matador Land & Cattle Co., 75 Tex. 465, 468, 469, 12 S. W. 866; Burleson & Baker v. Sugarland Industries (Tex. Com. App.) 255 S. W. 165, 167, 168; Farmers' Rice Milling Co. v. Standard Rice Co., supra page 906; Hamilton Mill & Elevator Co. v. Rayford, supra; Gulf, W. T. & P. Ry. Co. v. Browne, 27 Tex. Civ. App. 437, 66 S. W. 341, 343 (writ refused); Bowden v. Southern Rock Island Plow Co. (Tex. Civ. App.) 206 S. W. 124, 126. Plaintiff alleged that he exercised such right and sought to recover the difference between the· contract price, and the net proceeds arising from the resale of said turkeys. The evidence supported his allegations and justified the judgment rendered.

[4, 5] Defendant contends by another group of propositions that the court erred in refusing to instruct the jury to return a verdict in its favor, because the evidence .disclosed that plaintiff delivered the drafts drawn by him on Josephey & Co., with the bills of lading attached thereto, to the Farmers' National Bank of Hillsboro, and received credit therefor, less a 4 per cent. discount. He claims in this connection that, as a result of such transaction, the title to said turkeys and the right to possession thereof passed to said bank, and that plaintiff was thereby divested of all interest in or claim thereto and could not therefore maintain this suit. The undisputed evidence showed that plaintiff drew a draft on Josephey & Co. for the invoice price of each of said shipments; that he indorsed the bills of lading and attached them thereto and delivered the same to said bank; that said bank gave him credit for the amount thereof, less a 4· per cent. discount; that said drafts were forwarded to New York, presented to Josephey & Co., and payment· declined; that plaintiff then went to New York, inspected said turkeys, and found same in good condition, and finally sold them for the best price obtainable; that the bank in New York, to which .said drafts ·had been sent,

surrendered the bills of lading to plaintiff, or to the parties who purchased and paid for said turkeys; that said drafts were never paid, but were returned to the Hillsboro bank; and that the proceeds of such sale were paid to said bank. Plaintiff testified specifically that these drafts were placed in said bank for collection. The cashier of said bank testified that they "handled" said drafts. He expressly denied that the bank bought the shipment of turkeys represented by said bills of lading, and stated that they held said bills of lading as collateral to secure the payment of said drafts in New York. Whether the transaction between plaintiff and said bank, involving the delivery of said drafts to said bank and the giving of credit to plaintiff in his account therefor, constituted a sale of said drafts and a purchase of the same by said bank, or a delivery of the same to said bank for collection and tentative credit in anticipation of payment, depends upon the intent of the parties to said transaction at the time it occurred, and such intention is a question of fact to be determined from the evidence, and must be gathered from a consideration of all the circumstances attending the same. The fact that said bank accepted said drafts, credited plaintiff's account with the amount thereof, and forwarded the same to New York for presentation and payment, is not conclusive on the issue of whether it purchased said drafts or took the same for collection. Mayfield Co. v. First Nat. Bank (Tex. Civ. App.) 287 S. W. 510, 512, and authorities there cited.

[6, 7] The evidence discloses that plaintiff was engaged more or less extensively in buying and shipping poultry to the Eastern markets; that he had a line of credit at said bank and owed it at the time he delivered said drafts. He testified specifically that he placed the same in said bank for collection. His evidence on this issue, if contradicted at all, is contradicted by inference only. The cashier does not testify directly on this issue but speaks of their connection with said drafts as "handling" the same. Such an expression was peculiarly appropriate if the bank's connection with said drafts was as collecting agent for the plaintiff. No issue with reference to the capacity in which said bank received and handled said drafts was requested. The evidence is sufficient to support a finding that it took the same for collection, and we are therefore required to assume that the trial court so found. R. S. art. 2190.

[8] We are, however, of the opinion that plaintiff could maintain this suit under the facts in evidence, regardless of whether he sold said drafts to the bank or not. Defendant was not a party to the transaction between plaintiff and the bank, nor were its interests in any way affected thereby. Said drafts with bills of lading attached were transmitted to New York and presented to Hugo Josephey & Co., as defendant instructed and as plaintiff undertook to do or cause to be done. Such presentation was unconditional, and, if Josephey & Co. had paid the drafts, they would have been entitled to receive and appropriate said shipments. Plaintiff thereby discharged or caused to be discharged all his obligations in the premises. Plaintiff, by drawing said drafts and delivering them to said bank, engaged that they would be accepted and paid according to their tenor, and that, if payment was refused and proper steps taken to fix his liability, he would pay the amount thereof to said bank or any subsequent holder. R. S. art. 5936, § 61. There is no complaint on the part of the bank that plaintiff has not discharged this obligation. Neither is it contended that he has not sustained an actual loss in the transaction to the amount of the difference between the contract price and the net proceeds of the sale of said turkeys. There was no contractual relation between the bank and defendant, and the bank never acquired any cause of action against the defendant for the breach of said contract. Its recourse for reimbursement was against plaintiff alone. Plaintiff, having performed or tendered full performance of his contract with the defendant, was entitled to recover the damages sustained by him by reason of defendant's failure to receive and pay for said turkeys or cause the same to be done. The action of the court in overruling defendant's general demurrer and refusing his requested peremptory charge is approved.

[9] Defendant contends by his remaining group of propositions that the judgment of the trial court should be reversed, because that court failed to submit to the jury certain issues of fact which he contends were raised by the evidence, and failed to give an appropriate instruction with reference to the measure of damages. One of said issues was whether the original contract between plaintiff and defendant resulted from an offer made by defendant to plaintiff over the telephone and accepted by him in Hillsboro, or an offer made by plaintiff over the telephone and accepted by defendant in Sulphur Springs. Another of said issues was whether the contract in evidence, if breached at all, was breached in Hillsboro or New York City. While defendant objected to the charge of the court on account of the failure to submit said issues and the failure to submit an appropriate instruction concerning the measure of damages, no such issues were prepared and presented to the court with a request for their submission. Neither was any such charge prepared and submitted to the court with a request to give the same. It is specifically provided by statute that the failure of the court to submit an issue shall not be deemed ground for reversal of the judgment unless its submission has been requested in

writing by the party complaining of the judgment. R. S. art. 2190. A mere objection to the charge of the court on the ground that it fails to submit a particular issue does not meet the requirement of said statute. G. C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 475, 260 S. W. 561, 32 A. L. R. 1183; Frick v. I. & G. N. Ry. Co. (Tex. Civ. App.) 207 S. W. 198, 200 (writ refused). Since no issue with reference to the measure of damages was submitted by the court, no instruction with reference thereto was necessary. No error in the rulings complained of is shown.

The judgment of the trial court is affirmed.