### BROWN et al. v. WEIR. (No. 274.)

Court of Civil Appeals of Texas. Eastland. April 1, 1927.

Rehearing Denied May 5, 1927.

1. **Bills and notes** ⟐493(3), 516—**Introduction of notes made prima facie case, burden being on defendant to show lack of consideration though sworn plea of no consideration was filed (Vernon's Ann. Civ. St. 1925, art. 2010, subd. 10; art. 5933, subd. 24).**

Introduction of notes in evidence made prima facie case for plaintiffs, since under Vernon's Ann. Civ. St. 1925, art. 5933, subd. 24, notes imported a consideration, and, although sworn plea of no consideration, under article 2010, subd. 10, was filed by defendant, burden was on defendant to show that there was no consideration.

2. **Religious societies** ⟐7—**Members of unincorporated religious society, who, through trustees, enter into contracts, are individually liable thereon.**

Members of voluntary, unincorporated religious society, who, through their trustees and priests, enter into contracts, are individually liable thereon.

3. Trial ⟣═⟩365(1)—Jury's answer to special issue that notes were given to liquidate pre-existing debt of church did not conclusively show lack of consideration.

In suit by trustees of church on promissory notes, jury's answer to special issue that notes were given to liquidate portion of pre-existing debt of church did not show conclusively that notes were without consideration, but defendant was under further burden of showing that no other facts or circumstances existed to supply consideration for notes.

4. Trial ⟣═⟩232(2)—In suit on notes, court erred in placing burden of proof on plaintiffs to establish affirmative of special issues regarding consideration.

In suit by trustees of church on promissory notes, court erred in placing burden of proof upon plaintiffs to establish affirmative of special issues submitted regarding consideration for notes.

5. Subscriptions ⟣═⟩5—Where new obligations on faith of subscriptions are incurred to complete church building, consideration arises by reason of obligations incurred.

Where, after subscriptions are taken, new obligations on faith of subscriptions are incurred to complete church building, consideration arises by reason of work done or obligations incurred.

6. Appeal and error ⟣═⟩930(3)—Plaintiff need not request submission of special issues as to matters of defense to escape presumption of adverse finding of issues in support of judgment for defendant (Vernon's Ann. Civ. St. 1925, art. 2190).

It is not necessary for plaintiff to request submission of special issues as to matters of defense in order to escape presumption of an adverse finding of such issues in support of judgment for defendant, under Vernon's Ann. Civ. St. 1925, art. 2190.

Appeal from District Court, Eastland County; Elzo Been, Judge.

Suit by F. A. Brown and others, trustees of the First Baptist Church of Ranger, Tex., against A. K. Weir. Judgment for defendant, and from the overruling of a motion for new trial, plaintiffs appeal. Reversed and remanded.

L. R. Pearson, of Ranger, and Funderburk & Richardson, of Eastland, for appellants.

Patterson & Grantham, of Ciseo, for appellee.

LESLIE, J. This is a suit by F. A. Brown and others, trustees of the First Baptist Church of Ranger, Tex., against A. K. Weir on four promissory notes, each for the sum of $125, dated December 13, 1920, due respectively January 1, 1922, 1923, 1924, and 1925, each payable to the First Baptist Church of Ranger, Tex., or order, and each reciting "for value received" and stipulating for interest at the rate of 6 per cent. per annum from January 1, 1921, and containing the usual provision for attorney's fees.

Defendant pleaded general denial and specially pleaded defenses of: (a) Want of consideration; (b) estoppel; and (c) release from liability.

At the close of the testimony plaintiffs requested a peremptory instruction in their favor, which was refused, and the court thereupon submitted the following special issues to the jury:

"Special issue No. 1. Were the notes sued upon given by the defendant for the exclusive purpose of aiding in the liquidation of a then existing debt against the First Baptist Church of Ranger, Tex.?

"Special issue No. 2. Were the notes sued upon given by the defendant for the purpose of being applied upon the completion of the building of the First Baptist Church of Ranger, Tex.?

"Special Issue No. 3. Were the notes sued upon given by the defendant for both the purposes of aiding in the liquidation of a then existing debt and for further aiding in the completion of the building of the First Baptist Church of Ranger, Tex.?"

The jury answered "Yes" to the first issue and "No" to the second and third.

Plaintiffs filed a motion for judgment, notwithstanding the verdict of the jury, and the defendant filed a motion for judgment in his favor, and the court, upon consideration of the motions filed, rendered a judgment in favor of the defendant. From the overruling of the motion for a new trial and upon notice of appeal given, the judgment of the trial court and the proceedings therein are before this court for review.

There are three assignments of error, the first complaining of the action of the trial court in refusing to peremptorily instruct a verdict in favor of the plaintiffs; second, because the defendant, under his plea of lack of consideration for the notes, failed to discharge the burden of proof to show nonconsideration; and, third, complaint is made of the action of the court in placing upon the plaintiffs the burden of proof to show the affirmative of the issues 2 and 3, since said issues were material merely on the issue of consideration, the burden of establishing the nonexistence of which was upon the defendant. Subdivisions (b), (c), and (d) of the second assignment advanced the proposition that the undisputed testimony of the record in fact shows a consideration valid in law to support the notes, thus authorizing a judgment for plaintiffs.

"Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. * * *" Section 24, art. 5933, Vernon's A. T. Statute.

"An antecedent or pre-existing debt constitutes value. * * *" Section 25, Id.

⟣═⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] The promissory notes in controversy purport upon their face to have been given for a valuable consideration, but under the statute, all such written instruments import a consideration. Under the statute, the consideration for a written instrument can only be impeached by a sworn plea. Article 2010, subd. 10, same statute. Such a plea was interposed in the instant case. The notes importing a consideration, the burden was upon the defendant to show that there was none. The sworn plea did not shift the burden of proof to the plaintiff, but merely put the matter of consideration in issue with the burden of proof resting upon the defendant, appellee herein, to establish by a preponderance of the evidence a lack of consideration for the notes. Newton et al. v. Newton, 77 Tex. 508, 14 S. W. 157.

The introduction of the notes in evidence made out a prima facie case in favor of the plaintiffs and entitled them to a judgment which would be defeated by the defendant's establishing the nonexistence of consideration for the notes. The assignments assail the sufficiency of the defendant's testimony to establish the nonexistence of the consideration, and it becomes necessary to review the testimony generally and especially the appellee's testimony. In substance and so far as material, the appellee's testimony was as follows:

"I was a member of that church (the First Baptist Church of Ranger) at the time of the commencing of the present church building for that church. * * * I was one of the deacons and chairman of the mission board. * * * In the erection of that church building, I have been one of the officers and have been a trustee of the church and had a part in all of its transactions. I was active on the building program and building of the church: * * * I had gone on one note to the mission board for $10,000. I went to Dallas and went on another note for $4,000. * * * The $500 in notes they hold here now was a pledge that was put into the form of a note. After the church was finished we called George Truett out from Dallas to dedicate the church. At that time we owed $24,000, and this was a collection to liquidate that $24,000 that was still on the church. Of that $24,000 we owed $10,000 to the home mission board and $5,000 or $6,000, possibly $7,000, to —— and the bank $2,000. After the church was completed and we started to dedicate it, we owed $24,000 on the church. The hope was that we dedicate the church and that it be free of debt. This pledge was to pay off indebtedness already against the church. My recollection is that we owed the $24,000 and wanted to dedicate the church, and it is the custom among Baptist people, as I understand, that we don't dedicate a church till the indebtedness is cleared, and we had called George Truett to preach the dedicatory sermon, and my recollection is that we owed $24,000, and there was pledged at that meeting that' day a little better than $25,000 for the purpose of liquidating this indebtedness, this borrowed money at the bank. We had borrowed from the mission board and the bank while the building was under construction, * * * and this pledge was to liquidate the indebtedness against the building. My recollection is that I pledged at this time $500 and put it into four notes. * * * I had been loaning my credit and making notes, and afterwards they presented notes to some of us to sign and to help the finances of the church. I signed these notes, and I supposed they would be used at that time I gave them. * * * At the time I gave the notes involved here, I gave $500 and divided it into four notes. * * * I was on $12,000 worth of notes. * * * I think it is conceded among us that all members of the church are responsible for the church's welfare, spiritually and financially and in every way. * * * The debts that have been incurred for the building of the church might have been incurred since the time these notes were executed. That day we owed this $24,000, and we took that public offering to pay off that indebtedness. * * * As to what officers of the church incurred this $24,000 indebtedness, there was a gob of us that signed it. Any member of the church who was financially responsible. When we borrowed the $10,000 from the home mission board, they sent us a questionaire of what we were worth over what the law allowed us, and they picked out eight men to sign those notes. During the time the church was being built and those debts incurred, we had, a building committee. * * * I think I was a member of that committee. I was connected with all the church's finances. It is possible I might have been a member of its finance committee at the time of the construction of this church. * * * When we took the collection, it was the intention of the church that this indebtedness be paid. * * * I was in favor of paying the church debt at that time. It was for the purpose of paying the church debt that I executed the notes involved in this suit. That was my contribution toward the payment of the debt that had already been incurred. I, as a trustee of the church and as a deacon of the church, had had my part in the incurring of this indebtedness. and in executing these notes I was taking upon myself individually the burden of paying that much of the total debt of the church. I wanted to carry my part of the $24,000. That was my intention when I pledged it, to carry my part. I felt obligated at that time to do that because I had been active in incurring those debts."

Dr. W. H. Johnson, a witness for plaintiffs, but whose testimony was not contradicted by any other witness in the respects mentioned, testified, among other things:

"The First Baptist Church of Ranger is not incorporated. * * * We did bring suits against others than Dr. Weir. We had some settlements. * * * I remember there was a suit filed in one of these church notes against M. H. Hagaman. I would not say whether M. H. Hagaman was mayor of Ranger at that time, but he has been mayor. * * * I know Mr. Hagaman said it was an honest debt and he wanted to pay it and paid it. * * * Mr. Hagaman gave his note about the same time Mr. Weir gave his. The pledge was made the same day."

[2] In the light of the testimony and under the issue made by the defendant's verified

plea, what effect must be given to the jury's affirmative answer to issue No. 1, which finds the notes were executed for the purpose of liquidating a debt already existing against the church? Does the finding of the jury conclusively establish that the notes were and are without consideration to support them? Under the facts of the case it cannot be said that the defendant, Weir, was under no duty or obligation concerning the indebtedness which the notes were given to liquidate. The testimony shows that the defendant had long been a loyal and zealous member of the Baptist Church, versed in its rules and by-laws and having served in various official capacities, especially as deacon and trustee of the First Baptist Church of Ranger, which positions he seems to have occupied at the time he executed the notes in question. He had been influential among its membership, instrumental in constructing its house of worship, and active in incurring the very debts against it on the day of its dedication, and which debts, according to the custom and uses of that body, it was necessary to liquidate before the dedicatory services might be had. A noted divine, Dr. George Truett, had been invited and was present to deliver the sermon. That all things might be made ready for the occasion, the membership of the church, among them the defendant, proceeded to take a collection for the liquidation of the indebtedness against the church. That indebtedness amounted to about $24,000. The testimony discloses that at the time the debts were incurred and at the time the collection was taken to liquidate the same, the First Baptist Church of Ranger was unincorporated and that its membership was merely a voluntary religious society, whose liability on contracts in behalf of the organization is well expressed in 34 Cyc. 1123:

"But the members of a voluntary, unincorporated religious society, who through their trustees and priests, enter into contracts, are individually liable thereon."

Further, in Burton v. Grand Rapids School Furniture Co., 10 Tex. Civ. App. 270, 31 S. W. 91, certain deacons tested out their liability on a contract in which they had assumed to act for the membership in the purchase of furniture and seats for the church, executing notes therefor and writing after their signatures "Deacons, Montcalm Church." In the opinion in that case the liability of deacons and others active in incurring or ratifying such debts of an unincorporated association is expressed in the following language:

"An unincorporated association is no person, and has not the power to sue or to be sued. * * * But, in the case of religious and eleemosynary associations, the members and managing committees who incur the liability, assent to it, or subsequently ratify it, become personally liable."

Other authorities to the same effect: M. E. Church South v. Clifton, 34 Tex. Civ. App. 248, 78 S. W. 732; Summerhill v. Wilkes et al., 63 Tex. Civ. App. 456, 133 S. W. 492.

[3] From these authorities and the testimony given by the appellee himself, we find that he entered the dedicatory services—rather, the dedicatory collection—of the First Baptist Church of Ranger, liable, not in his official capacity as deacon, but in this individual capacity, not only for the note, executed and delivered by him to the the home mission board for $10,000, but by reason of his activities in incurring the same, for the full amount of the $24,000 sought to be liquidated upon that occasion. Therefore we quite agree with the proposition of the appellants that on the Sunday morning when the collection was taken to liquidate the entire indebtedness of the church, the appellee, in giving his notes for $500, was but giving a new form for an indebtedness which he already owed, and apparently being a man financially responsible, he was deriving large benefits from the collection and was getting the advantage of every other contribution in that his own undoubted liabilities were being diminished by exactly the amount of contemporaneous contributions. From this it follows that the answer of the jury to issue No. 1, that the notes were given to liquidate a portion of the pre-existing debt of the church, does not in our mind conclusively show that the notes were without consideration, but the defendant was under the further burden of showing that no other facts or circumstance existed to supply a consideration for the notes. There is a distinction to be drawn between a promise to pay a certain amount as a donation to discharge an already existing debt and a promise to pay a part of one upon which the promisor is already obligated to pay in toto; and the authorities cited and the principles relied upon by the appellee have a more direct bearing upon the former class of transactions and are not controlling in the disposition of this appeal.

The appellants advance different theories which they contend might create or bring into existence a consideration valid in law, though there might have been no consideration in the beginning to support the notes, and, for example, it is suggested: (1) That if the notes were given to aid in the liquidation of a pre-existing indebtedness and the church accepted the same in such way, along with contributions made by others for the same purpose, as to put the church and its officers under the duty and obligations to the defendant to apply the proceeds of the notes in discharge of such indebtedness, and not apply it to other needs and uses of the church, that such implied duty and obligation, arising from the acceptance under the circumstances, would constitute a sufficient consideration for the notes; (2) also, that by reason of the defend-

ant executing the notes in question for the particular purpose noted others interested with the defendant in the liquidation of the entire debt of the church contributed cash, gave notes, or incurred like obligations for the same purpose, then such state of facts would constitute or bring into existence a sufficient consideration for the notes.

It is not necessary to discuss hypothetical cases which might create a consideration for the notes, but it would seem that the testimony was easily available, in that the pastor of the church and the appellee were present and on the witness stand, and the trustees and others familiar with the building of the church and the disposition of the funds collected on that occasion were accessible, to show more fully than this record does the facts existing in this particular case, and the analogy, if any, between them and the theories advanced by appellants and referred to in sections 1 and 2 above.

In this connection attention is called to the opinion in Lillard v. Decatur Cottonseed Oil Co., 14 Tex. Civ. App. 67, 36 S. W. 792. The syllabus of that opinion reads:

"Where the stockholders of a corporation mutually agreed to contribute in proportion to their respective holdings of stock for the purpose of defraying the corporate debts, as such agreement rested upon sufficient consideration, and was made for its benefit, it may be enforced by the corporation in its own name."

In that case the corporation had operated at a loss which it was without funds to pay. The stockholders met, and as between themselves agreed that each should pay the loss in proportion to the stock severally owned. Some paid, others defaulted and were sued, and in disposing of the case on appeal the above proposition of law was announced. That is a sound proposition, and on full development of the facts in the instant case may be applicable. Before appellee could defeat his obligation on the notes the burden was on him to prove that no such state of facts existed. In this case the stockholders were not liable individually for the debts of the corporation, while in the instant case the appellee admits facts showing his personal liability for all the church debts.

[4, 5] The trial court erred in placing the burden of proof upon the plaintiffs to establish the affirmative of issues Nos. 2 and 3. An affirmative answer to either question would have entitled the plaintiffs to a judgment, for such an answer would but have established the fact that, after the subscription was taken (granting it was originally without consideration in law), new obligations on the faith of the subscriptions were incurred to complete the church building, and all the authorities agree that in such instances the consid-eration arises by reason of the work done or obligations incurred. Hopkins v. Upshur, 20 Tex. 89, 70 Am. Dec. 375; Williams v. Rogan, 59 Tex. 439.

Both issues pertained to the question of consideration and sought a finding from the jury as to the existence or nonexistence thereof, and, as held in Newton v. Newton, 77 Tex. 508, 14 S. W. 157, the burden was upon the defendant to show a want of consideration, and the plaintiff should not be required to prove that there was in any respect a consideration for said notes.

Appellee makes the point that under the pleadings and the evidence, the issue of release was in the case, and, the same not having been submitted to the jury by the court and the appellant not having requested its submission, it will be presumed to have been found by the court so as to support the judgment. Article 2190, Vernon's Civil Statutes of Texas 1925.

[6] If there was an issue of estoppel or release under the testimony the court did not submit it to the jury and the appellee did not request its submission, which it was his duty to do. It is not necessary for the plaintiff to request the submission of the special issues as to matters of defense in order to escape the presumption of an adverse finding of such issues in support of a judgment for the defendant. Christian v. Dunavent (Tex. Civ. App.) 232 S. W. 875.

The fact that the First Baptist Church of Ranger withdrew fellowship from the defendant is without any legal significance in so far as the disposition of this appeal is concerned. He testified:

"I suppose the First Baptist Church just withdrew fellowship from me and didn't turn me out. I am not questioning the right of the Baptist Church to do that, and all matters of policy and actions of a Baptist Church are determined by a vote of the local organization. It is a very democratic body, and from the church's action expressed by a majority, there is no appeal to any other church, court, or body."

The withdrawal of fellowship seems to have followed from a misunderstanding arising with reference to policies to be pursued in the local church, and it is unnecessary to recount the same; but suffice it to say that there is nothing in the record or said transaction from which any moral dereliction can be imputed to the appellee or any member of his family.

If upon another trial the evidence goes no further than to establish that the notes sued on were given for a pre-existing debt of the church, the trial court should instruct a verdict for the plaintiffs.

For the reasons assigned, we have concluded to reverse and remand this cause for another trial. It is so ordered.