# HARRIS v. THORNTON'S DEPARTMENT STORE.

## No. 1535.

Court of Civil Appeals of Texas. Eastland.

April 3, 1936.

Rehearing Denied May 15, 1936.

Kirby, King & Overshiner, of Abilene, for appellant.

Cox & Hayden, of Abilene, for appellee.

FUNDERBURK, Justice.

This is a suit by Jack Harris against Thornton's Department Store to recover damages, actual and exemplary, for alleged slander, assault, and false imprisonment. It was alleged that after plaintiff had purchased some meat and butter at defendant's store and had proceeded some distance from the store, Welch, defendant's manager, overtook him and asked in the presence and hearing of numerous persons: "Why didn't you pay for that merchandise you got in the store?" That after plaintiff's assertion that he had paid for it, Welch replied: "No you did not. You are going back to the store with me." That Welch thereupon took him by the arm and forced him to return to the store. It was alleged, in effect, that said words, the manner of speaking them, and the accompanying actions constituted an accusation that plaintiff had been guilty of theft; was a thief and had stolen said merchandise.

The case was submitted to a jury upon special issues. Special issue No. 1 was: "Do you find from a preponderance of the evidence that B. Welch, on or about June 30, 1934, accused plaintiff with the theft of merchandise from defendant's store?" Each of the other issues was submitted with the direction that the jury do not answer it unless they had answered said special issue No. 1, "Yes." No issues were submitted or requested relating to assault or false imprisonment. The jury's verdict upon said special issue No. 1 was "No," and therefore in accordance with the directions given the other special issues were not answered. Upon the verdict so returned, judgment was rendered in favor of the defendant from which the plaintiff has appealed.

The first question for decision is whether, under the circumstances presented by the record, the court erred in refusing to define the term "theft" as used in said special issue No. 1. The question is attempted to be raised in two ways. Appellant requested and the court refused a (so-called) charge by which had it been given the jury would have been instructed that: "Theft is the fraudulent taking of corporal personal property, belonging to another from his possession, or from the possession of some person holding same for him, without his consent and with the intent then and there to deprive the owner of the value of same and to appropriate it to the use and benefit of the person taking it." By the first assignment of error it is contended that the court erred in refusing to submit said requested charge. By the fifth assignment of error it is alleged that the court erred in not sustaining appellant's objection to the submission of said special issue because the court had failed to define the term "theft" as therein used. The point is, therefore, presented under both assignments of error.

We regard the point as being presented by the assignment based upon the action of the court in overruling the objection; and not by the assignment based

upon the refusal of the court to give the requested ·definition. When a case is submitted upon special issues and it becomes necessary under the provision of R.S. 1925, art. 2189, for the court to give a definition or explanation of legal terms employed in the statement of such issues, and the court wholly fails to do so, then in order to complain of such failure a party is required to make a' proper and timely objection and is not required to tender and request the giving of such definition or explanation. Robertson & Mueller v. Holden (Tex.Com.App.) 1 S. W.(2d) 570; Gulf C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183; Miller v. Fenner, Beane & Ungerleider (Tex.Civ.App.) 89 S.W. (2d) 506, 514.

The word "theft" has a popular or common and ordinary meaning. Under our Penal Code it has a legal or technical meaning. P.C. arts. 1410 and 1412. We find nothing in appellant's petition which indicates, or at least indicates with any degree of certainty, that the term was used in the pleadings as having the legal or technical meaning, ·rather than the ordinary or popular meaning. The alleged slanderous words. did not contain the term "theft," but it was alleged that defendant's manager by his tone of voice, manner, and ·actions accused plaintiff of theft and of being a thief and having stolen the merchandise by asking him the question, "Why didn't you pay for that merchandise you got in the store?" and by contradicting plaintiff's assertion that he had paid for it with ·the reply, "No you did not. You are going back to the store with me." We think if such constituted a charge of theft in any sense, that bystanders and witnesses to said transaction would have understood that it was theft in its ordinary and popular sense. Appellant himself insists that the test is how it would have reasonably been understood by the witnesses to the transaction.

Webster's International Dictionary defines "theft" thus: (1) "Act of stealing"; (2) "that which is stolen." In Mathews v. State, 36 Tex. 675, "steal" was held to be synonymous with "theft." Of the word "steal" Corpus Juris says: "It has been said that in its popular and broader or colloquial sense, it may signify any wrongful and unlawful taking, of person, or of property or any wrongful conversion of the same." 59 C.J. 1222,

§ 1. .The same authority says that: "As a general rule, to say of a person that he 'stole,' 'is stealing,' 'has stolen,' or otherwise charging him with stealing property belonging to the speaker or to a. third person, without any accompanying language to qualify the offensive import of the charge, is actionable per se; * * * but the word 'steal' colloquially is sometimes used where no intention of a crime is intended to be charged." 36 C.J. 1207, § 139. "Theft, as the word .is commonly used," said an Ohio court in Great American Mutual Indemnity Co. v. Meyer, 18 Ohio App. 97 (quoted in note 62 C.J. 890), "is a good strong word, big enough to cover a variety of rascalities." We very strongly incline to the view that if the language charged to the manager of appellee constituted an accusation of theft it did so within the ordinary and popular understanding of the term, rather than its technical or legal meaning.

But whether or not we are correct in this view, we are of the opinion that the failure of the court to give the legal or technical definition of the term was more favorable to appellant than the appellee. Under all the evidence in the case the jury could more certainly and reasonably have found the issue in favor of appellant without the definition than had it been given. If, therefore, there was any error in the refusal of the court to define the term as a legal and technical term it was affirmatively harmless.

■ It is next insisted that the court erred in refusing to give his requested instruction as follows: "In considering the meaning of words uttered, as to whether or not they were such as to accuse the plaintiff of theft, you are instructed that such meaning does not depend upon the' intent of the speaker but it is what they would mean to the ordinary hearer and in arriving at their meaning the jury may consider them in the light of all the facts and surrounding circumstances at the time they were uttered." This does not purport to define or explain the meaning of any word or term used in the statement of the special issues submitted. It is a special charge or instruction upon the law of the case, not proper to be given, in a case submitted to the jury upon special issues. See long list of authorities cited in Standard v. Texas & P. C. & O. Co. (Tex.Civ.App.) 47 S.W. (2d) ·443, and the following additional au-

thorities: Wichita Valley R. Co. v. Anderson (Tex.Civ.App.) 48 S.W.(2d) 361; Texas & P. R. Co. v. Phillips (Tex.Civ.App.) 56 S.W.(2d) 210; Liberty Mut. Ins. Co. v. Boggs (Tex.Civ.App.) 66 S.W.(2d) 787; Lewis v. Halbert (Tex.Civ.App.) 67 S.W.(2d) 430; Texas & P. R. Co. v. Foster (Tex.Civ.App.) 58 S.W.(2d) 557; Wichita Valley R. Co. v. Brown (Tex.Civ.App.) 274 S.W. 305; Texas & P. R. Co. v. Perkins (Tex.Com.App.) 48 S.W.(2d) 449; Texas & P. R. Co. v. Perkins (Tex.Civ.App.) 29 S.W.(2d) 835; Maryland Cas. Co. v. McGill (Tex.Civ.App.) 69 S.W.(2d) 158; Mahone v. Bowman (Tex.Civ.App.) 70 S.W.(2d) 323; Texas & P. R. Co. v. Rampy (Tex.Civ.App.) 71 S.W.(2d) 387; Tallabas v. Wing Chong (Tex.Civ.App.) 72 S.W.(2d) 636; Iowa Mfg. Co. v. Baldwin (Tex.Civ.App.) 82 S.W.(2d) 994; Williams v. Rodocker (Tex.Civ.App.) 84 S.W.(2d) 556.

The preliminary observations upon the first point above discussed are likewise applicable to this one. The matter sought to be brought to the attention of the jury related to special issue No. 1 which, being given, it was necessary that its deficiencies be called to the attention of the court by an objection and not by request for an issue or instruction to be given.

■ It is next contended, in substance or effect, that the evidence was conflicting as to whether defendant's manager, Welch, spoke or uttered the alleged slanderous words, and that an issue submitting that question should have been given to the jury. Undoubtedly, that was an issue which plaintiff had the burden of establishing. "Failure to submit an issue," says the statute, "shall not be deemed a ground for reversal of the judgment unless its submission has been requested in writing by the party complaining of the judgment." R.S.1925, art. 2190. When by this provision a party is under the necessity of requesting a special issue, in order to avoid a waiver of error in the action of the court, in failing to submit it, he is governed by the provisions of R.S.1925, art. 2188. Walker v. Hirsch Cooperage Co. (Tex.Com.App.) 236 S.W. 710; Lamar v. Panhandle & S. F. R. Co. (Tex.Com.App.) 248 S.W. 34; St. Louis Southwestern R. Co. v. Hill Bros. (Tex.Civ.App.) 80 S.W.(2d) 432; Largent v. Etheridge (Tex.Civ.App.) 13 S.W.(2d) 974. To comply therewith, he must, therefore, accompany the request with a correctly stated issue in such form that the court can make his action upon such request a matter of record simply by indorsing thereon "given" or "refused," as the case may be. Same authorities, Miller v. Fenner, Beane & Ungerleider, supra. The record in this case shows no such requested issue. No assignment of error has for its subject-matter the refusal of the court to give any such requested issue.

The point is presented, if at all, by an assignment alleging error in the action of the court "in overruling and not sustaining" an objection to the special issues, denominated "court's main charge," on the ground, among others, "Because the court fails to submit to the jury the issue of what was said by Welch to plaintiff as set out in plaintiff's pleading and as testified to by the witness Payne and plaintiff Harris." Obviously the objection does not refer to any particular issue submitted, nor point out any incorrectness therein. We have recently had occasion to consider the circumstances under which *objections* are required and those under which *requests* for the giving of charges or submission of special issues are required, and concluded, upon the authorities cited, that: "When * * * a request for the submission of an issue is required as support for an assignment of error complaining of the failure or refusal of the court to submit an issue not attempted to be submitted, an objection to the failure or refusal of the court to submit it will not dispense with the necessity that the party charged with establishing such issue shall make due and timely request for such submission." Miller v. Fenner, Beane & Ungerleider, supra.

We are here dealing with a situation to which that proposition is believed to apply, and we accordingly hold that plaintiff by his failure to request the submission of the issue, and upon the refusal of the court to give it, to assign error based upon such action, has waived the error, if any, in the failure of the court to submit said issue. This conclusion not only disposes of the point now under consideration, but has a controlling effect upon the disposition of the appeal, as will hereafter appear.

■ A number of appellant's other contentions, such as the one insisting that the court erred in submitting an issue inquir-

ing whether Welch was acting within the course of his employment, and the issue with reference to damages, we find it unnecessary to determine because the questions are presented with reference to issues that were not answered by the jury, and in no way enter into or affect the judgment that was rendered.

■ Another point made is that the court erred in the submission of all the special issues, other than said special issue No. 1, by directing the jury to answer each of them only in the event that they had answered special issue No. 1 "Yes." The negative answer of the jury to special issue No. 1 was completely determinative, in itself, of the judgment to be rendered, regardless of how the jury might have answered any other special issue submitted. Under such circumstances we think it is the settled and approved practice for the court to direct the jury to answer other issues only if they find such completely determinative issues in a certain way. Upon this point we shall content ourselves with a citation of authorities which we think support the correctness of the practice. Standard Acc. Co. v. Williams (Tex.Civ.App.) 4 S.W.(2d) 1023; Traders' & General Ins. Co. v. Nunley (Tex.Civ.App.) 82 S.W.(2d) 715; Northern Texas Traction Co. v. Bryan (Tex.Civ.App.) 299 S.W. 325; Western Ind. Co. v. Corder (Tex.Civ.App.) 249 S.W. 316; Ineeda Laundry v. Newton (Tex.Civ.App.) 33 S.W.(2d) 208; Millerman v. Houston & T. C. R. Co. (Tex. Civ.App.) 27 S.W.(2d) 897; Standard v. Texas P. C. & O. Co., 47 S.W.(2d) 443; Traders & Gen. Ins. Co. v. Babb (Tex.Civ.App.) 83 S.W.(2d) 778; Texas Emp. Ins. Ass'n v. Hilderbrandt (Tex.Civ.App.) 80 S.W.(2d) 1031; Perkins v. Nevill (Tex. Com.App.) 58 S.W.(2d) 50; San Antonio Pub. Ser. Co. v. Murray (Tex.Civ.App.) 59 S.W.(2d) 851; Stedman Fruit Co. v. Smith (Tex.Civ.App.) 45 S.W.(2d) 804; Texas Emp. Ins. Ass'n v. Heuer (Tex.Civ.App.) 10 S.W.(2d) 756; C. E. Parks Grain Co. v. Gwynn (Tex.Civ.App.) 265 S.W. 1071; Young v. Harvison (Tex.Civ.App.) 283 S.W. 687; Northcutt v. Magnolia Pet. Co. (Tex.Civ.App.) 90 S.W.(2d) 632.

■ The next question relates to the argument of counsel. Counsel for defendant asked the witness Payne, who claimed to have been present and heard the alleged slanderous words, if he was not in jail at Anson on that day. He answered that he was not. He was then asked, "When were you in jail?" Objection to the answering of this question was made and sustained. Counsel was permitted to repeat the question whether witness was in jail on the particular day, and he reiterated that he was not. Defendant made no effort to show by any further testimony that said witness was in jail at the time he claims to have been present in Abilene. In argument of the case, counsel for plaintiff criticised counsel for defendant in asking the question whether the witness was in jail. In the reply argument, counsel for the defendant said: "Judge Overshiner criticised me for asking the witness Payne whether or not he was in jail at Anson on June 30th the day this transaction occurred. Well, in replying I want to say that if it had not been objected to and if the court had not sustained the objection and had let me open this question up, I would have showed you where Payne was on the 30th day of June, 1934." The record does not show that the court in any manner prevented counsel from showing where Payne was on the 30th day of June, 1934. Under the circumstances we are not prepared to say that Judge Overshiner was not justified in. criticising counsel for asking the question whether the witness was in jail. The argument of counsel was an unmistakable intimation to the jury that he, but for his being prevented by the court, could have shown that the witness was in jail, or at least in some place tending to detract from his credit as a witness. Objection to the argument was overruled. We think the argument was of a character calculated to prejudice the plaintiff and must be presumed to have done so, unless the record otherwise reflects that under the particular circumstances of the case it was harmless.

■ We overrule the contention that if the alleged slanderous words were proved to have been uttered that they as a matter of law amounted to an accusation of theft.

■ We likewise overrule the contention that the evidence was insufficient to support the jury's finding upon special issue No. 1. There was a sharp conflict in the evidence as to whether the manager, Welch, spoke the alleged slanderous words. According to his testimony he did not. Special issue No. 1 was so stated that if the jury believed the testimony of Welch, then they could reasonably have made no other answer to the special issue.

The error in the argument of counsel would ordinarily require a reversal of the

case. However, in considering appellant's assignment under which the contention was made that the court erred in not submitting an issue calling for a finding of whether Welch, the manager, uttered the alleged slanderous words, it clearly appears that that issue was one raised by the evidence. It was an issue without the finding of which in favor of the plaintiff no judgment for him could be rendered. Under our conclusion stated, the issue was waived as the basis for any judgment for plaintiff. That is a question upon which the improper argument of counsel could have had no bearing. We are therefore of the opinion that the record shows affirmatively that the improper argument of counsel was immaterial upon the question of the correctness of the judgment, and therefore harmless. It is our conclusion that the judgment of the court below should be affirmed, and it is so ordered.

### On Rehearing.

Appellant by his motion for rehearing challenges so ably and forcefully the correctness of our opinion, upon one point, that it well merits, we think, further discussion of the subject and a more amplified statement of our views.

In the beginning, this court is glad of the opportunity to declare its whole-hearted indorsement of the statement in the motion, that "the practice of the law ought to be simplified rather than rendered complex. * * *" We cannot assent to the suggestion that our interpretation of the law, upon the procedural question involved, makes for complexity rather than simplicity. We think the contrary is the fact. The conflict in the decisions is exceedingly regrettable. Shall we abandon our views, several times expressed, in the opinions of this court regarding the proper interpretation and effect of statutory provisions, which, as we see it, have the undoubted sanction of the Supreme Court, expressed in opinions never overruled, so far as any intent to do so appears, and adopt an interpretation directly contrary to our convictions, merely because of the difficulty in satisfactorily reconciling some of the declarations made in the decisions relied upon by appellant? We are firmly of the conviction that to do so would have the effect of adding to the existing confusion and uncertainty and of postponing the clarification of the law upon the point in question.

The question is: In a civil suit submitted to a jury upon special issues, where in a material issue joined by the pleadings and raised by the evidence, is not submitted (not attempted to be submitted), is the action of the court in failing to submit such issue reviewable upon appeal where the party having the burden of establishing such issue has not prepared a properly stated issue and tendered it to the court with timely request that it be submitted; but instead, has merely objected in writing to the issues given or the "charge of the court" to the effect that the particular issue is not being submitted?

In a case submitted upon special issues a material issue made by the pleadings and the evidence when not submitted and not requested to be submitted, is waived. A citation of all the authorities supporting this proposition would perhaps cover a page of this opinion. We shall content ourselves with saying that at least 125 cases supporting the proposition appear in the Southwestern Digest under the subjects of Trial, Most of these cases have been decided since the decision of the Supreme Court in Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084 (Jan. 11, 1928). There are perhaps just as many cases decided prior to the last-named decision in which it was declared that such an issue not submitted and not requested to be submitted shall be deemed to have been found so as to support the judgment. The two propositions are obviously inconsistent and contradictory. If an issue is waived it cannot afford support for a judgment. If an issue supports a judgment, the fact that it does is proof conclusive that it has not been waived. The statute (R.S.1925, art. 2190) upon the construction of which both these lines of decisions arose, had these two provisions: (1) "Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless" etc.; (2) "an issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment if," etc. It is obvious that these two provisions of the statute were not necessarily in conflict. One declared the result of the other. In order to hold, therefore, that an issue not submitted and not requested is waived was in effect to deny that an issue under such circumstances would be "deemed as found by the court in such manner as to support the judgment."

The steps by which said second quoted provision of article 2190 has by the process of judicial decisions been thus largely nul-

lified, are interesting. At first the statute was held to mean what it seems plainly to say. Effect was given to both of said provisions. Moore v. Pierson, 100 Tex. 113, 94 S.W. 1132. Thereafter, by decisions both prior and subsequent to the decision in Ormsby v. Ratcliffe, supra, there was evolved the proposition which we undertook to state in Miller v. Fenner, Beane & Ungerleider, 89 S.W.(2d) 506, 513, as follows: "A party not charged with the burden of establishing an issue in the trial of a case is, in the absence of its submission, under no duty to request its submission and waives no right because of a failure to do so." Citizens' Nat. Bank of Brownwood v. Texas Compress Co. (Tex.Civ.App.) 294 S.W. 331 (quoted with approval on this point in Ormsby v. Ratcliffe, supra); Texas City Transp. Co. v. Winters (Tex.Com.App.) 222 S.W. 541; Galveston, H. & S. A. R. Co. v. Price (Tex.Com.App.) 240 S.W. 524; Turner v. Missouri, K. & T. R. Co. (Tex. Civ.App.) 177 S.W. 204; Christian v. Dunavent (Tex.Civ.App.) 232 S.W. 875; Alexander v. Good Marble & Tile Co. (Tex. Civ.App.) 4 S.W.(2d) 636; Brown v. Weir (Tex.Civ.App.) 293 S.W. 916; Panhandle & S. F. R. Co. v. Burt (Tex.Civ.App.) 71 S.W.(2d) 390, 391; Continental Oil Co. v. Berry (Tex.Civ.App.) 52 S.W.(2d) 953; Walling v. Rose (Tex.Civ.App.) 2 S.W. (2d) 352; Tripplehorn v. Ladd-Hannon Oil Corporation (Tex.Civ.App.) 8 S.W.(2d) 217; Southern Surety Co. v. Solomon (Tex. Civ.App.) 4 S.W.(2d) 599; Austin Gaslight Co. v. Anderson (Tex.Civ.App.) 262 S.W. 136; Osceola Oil Co. v. Stewart Drilling Co. (Tex.Com.App.) 258 · S.W. 806. This proposition cannot be true and at the same time effect be given to the provision that "An issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment." The proposition is in effect a denial of the statute, and the statute is in effect a denial of the proposition. With the simultaneous appearance of decisions by the courts, some giving effect to said proposition and others to said statute, it was inevitable that great uncertainty and confusion should be the result.

Then came the decision in Ormsby v. Ratcliffe, supra. In it the Supreme Court undertook to classify issues, distinguishing between "issues in the case which are independent causes of action in themselves or controlling and independent grounds of recovery, or independent grounds of defense" and issues which are "in ᴀccord with, and supplemental or incidental to, and which support, the issues of fact which were submitted and found by the jury." In other words, this decision as construed and applied in subsequent cases, notably Dallas Hotel Co. v. Davison (Tex.Com.App.) 23 S.W.(2d) 708, classified issues as "independent issues" and "incidental," "supplemental," or "supporting" issues; and was a holding that as to the former the provision that an issue ·not submitted nor requested should be deemed to have been found so as to support the judgment, did not apply, the effect being that such issue would be waived; but that as to the latter, said provision would apply with the effect stated therein. It is not surprising that this decision did not have the effect of completely clearing up the existing confusion. It introduced an equally difficult problem as to what were independent issues and what were incidental, supplemental, or supporting issues. However, the decision in Dallas Hotel Co. v. Davison, supra, and other cases following it, have made it fairly certain that the kind of issues which if not submitted and not requested will be waived, are those like the issue of negligence, proximate cause, etc., or, in other words, the ultimate material issues of fact raised by the pleadings and the evidence; issues which one or the other of the parties has the burden of establishing in order to support a judgment in his favor. Such issues are clearly recognizable as the same kind of issues which, as stated in the previously quoted proposition, the party not having the burden of establishing is under no duty to request the submission thereof, and waives no right by the failure to do so.

As the true nature· of "independent issues" has become better understood, it is increasingly apparent that "incidental," "supplemental," and "supporting" issues are not real issues at all in the same sense of independent issues; but only evidentiary fact issues or questions of fact comprising only one or more elements of an independent or ultimate issue, which, when not objected to, constitutes so far as any right to complain thereof is concerned, a sufficient submission of the independent or ultimate issue. It was confusing to say of such so-called issues that said provision that "an issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment" applied thereto; because, while true in a sense, such was the result anyway of the failure to object as provided in R.S.1925, art. 2185. (This article as well

as 2188 have been held to apply to cases submitted on special issues as will hereafter be noticed.) In saying that said provision of article 2190 applied to such issues an unnecessary uncertainty was created regarding the meaning of issues. The result of the attempted classification of issues being merely to confuse the concept of ultimate issues (necessary to be pleaded and proved by evidence) with evidentiary issues (controverted facts admissible as evidence to prove or disprove the ultimate issues) it is not surprising that with a better understanding of the meaning of independent or ultimate issues the recently reported decisions are almost devoid of declarations, once so numerous, to the effect that an unsubmitted, unrequested, issue will be deemed to have been found so as to support the judgment, etc.

This preliminary discussion has been deemed advisable because it is believed that the confusion and uncertainty mentioned is inextricably linked with the similar confusion regarding the question at issue. The uncertainty regarding kindred questions arising upon the same statutes has had, we think, a most important effect in clouding the question under consideration. It is natural that as such other questions have become better settled they may aid in the solution of this one.

The provisions for submitting cases upon special issues (R.S.1925, art. 2189 and 2190), it is observable, make no mention of "objections." It is insisted that articles 2185 to 2188, just preceding articles 2189 and 2190, apply only to cases submitted upon a general charge. It is true that, in terms, they do apply only to submissions upon a general charge. This suggests the question, Where is the authority then for the universal practice in cases submitted on special issues of requiring written objections to improperly stated special issues? The answer is that, although in terms said articles 2185 to 2188, inclusive apply to cases submitted on a general charge, it has been judicially determined that for some purposes at least, including the making of objections and the refusing or modifying of requested special issues, said articles do apply to cases submitted on special issues. Walker v. Hirsch Cooperage Co. (Tex.Com.App.) 236 S.W. 710; Lamar v. Panhandle & S. F. R. Co. (Tex.Com.App.) 248 S.W. 34; Bishop v. Miller Ind. Underwriters (Tex.Civ.App.) 254 S.W. 411; Sessums v. Citizens' Nat. Bank (Tex.Civ.App.) 72 S.W.(2d) 403. Considering this point as authoritatively established, which, we think, we must, the correct answer to the question to be decided, viewed in the light of the preliminary discussion, appears to be dependent upon whether or not, granting that an issue not submitted and not requested in writing is waived; does, or may, an objection to the issues (treating them as the "charge of the court") on the specified ground that the court has failed to submit an issue, constitute a request for its submission within the meaning of said article 2190? Is an objection a request, or necessarily inclusive of a request? We think not, surely; but if so, that does not conclusively determine our question.

The statutes as construed by the courts make different provisions regarding "objections" and "requests." This difference was especially apparent when Gulf T. & W. R. Co. v. Dickey, 108 Tex. 137, 187 S. W. 189, was decided. It was there declared, construing statutory provisions since amended, that errors in the general charge of the court were reviewable upon proper objections having been made and filed (just as now required), without bills of exception; but that errors in refusing requested special charges or instructions required bills of exceptions. There was thus clearly recognized a distinction between objections to the charge of the court and requested special charges or instructions which undoubtedly would be just as true as between "the issues" regarded as the "general charge" and requested special issues. By subsequent amendment of R. S.1911, art. 1974, in the year 1917 (now R.S.1925, art. 2188) and R.S.1911, art. 2061 (R.S.1925, art. 2237, subd. 3) specially requested charges or instructions refused or modified and, perforce of the decisions that the statute also applies to cases submitted on special issues, requested special issues refused or modified have the same force and effect of bills of exception. It therefore appears that the objections to charges or issues are so distinct from requests for the giving of special charges or submission of special issues that separate statutory provisions are required to dispense with the necessity of taking formal bills of exception.

That an objection to the charge of the court or to the special issues does not perform the same function as a request for the submission of a special issue, is further clearly indicated by the intention expressed in article 2188 that assignments

of error shall be based upon "the action of the trial judge in refusing or modifying" requested special issues; while as to charges given or issues submitted, of which it is sought to complain on appeal, the assignments of error necessarily have for their subject-matter the affirmative action of the court in giving some part of the charge or issues (over objections), or the equally affirmative action of overruling the objections.

Although, as previously shown, articles 2185 to 2188, inclusive, apply, in at least some respects, to cases submitted on special issues, the failure of courts to recognize the essential difference between "the charge of the court" and "the issues of fact" to be submitted as special issues has undoubtedly been a fruitful source of inaccurate expression and consequent confusion and error. The "written charge to the jury on the law of the case" (R.S. 1925, art. 2184) necessarily imports the idea of a unity; but the "issues of fact," which are required to be submitted to the jury if the case is submitted on "special issues" (Id.), does not connote something in which the idea of a unity necessarily inheres. It would be entirely proper for a trial judge to state each special issue on a separate piece of paper. The very terms of said article 2184 make a distinction between the charge and the issues by the manner of referring to them in the same connection as two different things. "The judge shall * * * deliver a written charge" or "he shall submit the issues of fact" is the language of the statute. But for the habit of thinking of the special issues as the charge of the court, it would perhaps never have occurred to any one in a case submitted on special issues merely to object to "the charge of the court as a whole" because it fails to submit a particular issue. How would such action properly be made a matter of record and assigned as error if the court should submit each issue by a separately filed instrument. It would seem to require at least a formal bill of exception, would it not? We cannot think that any of the statutory provisions dispensing with the necessity for formal bills of exception could be held to fit such a case.

But, let us consider the question more directly from the standpoint of the decisions.

In Moore v. Pierson (Tex.Civ.App.) 93 S.W. 1007, 1008, appellant contended: "It was the duty of the court to submit all the issues pleaded by the plaintiff which were sustained by the evidence, or upon which sufficient evidence had been introduced to authorize the jury to find a verdict thereon for the plaintiff, *when his attention was called thereto* by a special charge asked by the plaintiff, *distinctly setting out such issues;* and his failure or refusal to do so was material error, and did materially affect the plaintiff's right to recover in this case—in fact, denied him a trial on his main cause of action as pleaded and proved." (Italics ours.) This is in substance and effect exactly the contention made by the appellant in the instant case, except it is not here contended that the objection was one "distinctly setting out" the omitted issue. The Court of Civil Appeals overruled this contention on the ground that there was not thereby shown the written request for the submission of the issues so as to avoid the operation of the statute that "the failure to submit any issue shall not be deemed a ground for reversal of the judgment upon appeal or a writ of error, unless its submission has been requested in writing," etc. The subject of this holding was discussed and affirmed by the Supreme Court. Moore v. Pierson, 100 Tex. 113, 94 S.W. 1132. Although the Supreme Court decision in Moore v. Pierson, supra, has undoubtedly been overruled, in effect, by Ormsby v. Ratcliffe, supra, and the other cases hereinbefore mentioned upon one point dealt with in the foregoing preliminary discussion, it must, we think, still be regarded as high authority on the proposition that no mere suggestion to the court of an omission to submit a special issue even when accompanied with a statement of the issue (short, of course, of being in itself the prescribed request) will constitute the required request for the submission of such issue as provided in article 2190.

Gulf, C. & S. F. R. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183, seems to us clearly decisive of the proposition that objections to charges or issues cannot be made to serve interchangeably with requests for the submission of issues. The court stressed the distinction between the entire omission or failure to submit an issue, and an attempted but defective or erroneous submission, and pointed out that a different rule applied to each. As to the latter it was held that the 1913 amendment of the statutes worked a change and by such change required ob-

jections when theretofore under different circumstances requests and objections were required. The Court of Civil Appeals (236 S.W. 521, 526) had held that the charge in question was not affirmatively erroneous "and therefore not reversible error, in the absence of a requested instruction by appellant more fully explaining the degree of care required by appellant as a carrier of passengers." Upon this point Judge Cureton said: "This was once the rule with reference to charges not affirmatively erroneous. Due, however, to statutory enactments, it is no longer so." The conclusion was declared that whether a case was submitted on a general charge or upon special issues "the failure to submit any issue shall not be deemed a ground for a reversal of the judgment unless its submission was requested in writing by the complaining party." But where the court has undertaken to submit an issue either by general charge, or upon special issues, the former distinctions between charges or issues affirmatively erroneously, and those only erroneous because of incompleteness or too great generality, etc., had been abolished and timely objections are required to all alike upon penalty of a waiver thereof. It was held that where objections were required there was no further requirement for the tender of a special charge. Said the court: "Having undertaken to state what must be done in this respect, the statute, under a well-known rule of construction, must be held to have excluded the necessity of doing anything else." Due application of the last-named rule of construction compels the conclusion that, since article 2190 has undertaken to state that when the court fails to submit an issue the party interested shall in writing request its submission as a con-

dition upon which he may complain upon appeal, the statute must be held to have excluded the necessity of doing anything else, as, for instance, making objections to such failure. Note that the court in this case refers to the request for the giving of a special charge as the "*tender* of a special charge." How can one "tender" a special issue for submission by merely objecting to the failure of the court to give it?

There are subsequent decisions which have misconstrued the Conley Case and cited it to the exact opposite of what it held. This, we think, is but another error due to the habit of thinking of the issues as a charge of the court. Such cases seem to have entirely overlooked the holding in the Conley Case, which because of its great importance we repeat: "A failure to submit any particular issue under either statute [i. e., the statute providing for the submission of cases on a general charge, or the one providing for submission on special issues] can be reviewed on appeal only where the record shows a special charge was tendered on that issue."[1] The holding that due to the change in the statutes an error in a charge consisting of an omission which could formerly be complained of, only when request had been made to give a special charge, was since said change required to be objected to, upon a penalty of the waiver thereof, was mistakenly applied to the *omission* to submit an issue. The very contrary was the holding of the court, as the last quotation shows.

There are many cases not directly holding that an objection cannot perform the function of a request for the submission of an issue, but which so specify or de-

[1] It would appear to be questionable whether the conclusion of the court thus expressed is as fully and certainly supported by reason and authority wherein it relates to cases submitted on a general charge as it is wherein it relates to cases submitted on special issues.

Article 2185, relating to the submission of cases on a general charge, mentions "objections" but says nothing to the effect that the failure of the court to charge upon an issue shall not be ground for a reversal unless a special charge on such issue is requested. On the other hand, article 2190, relating to the submission of cases on special issues, says nothing about objections, but specifically states that: "Failure to submit an issue shall not be

deemed a ground for reversal of the judgment, unless its submission has been requested in writing," etc. If the Supreme Court had reached the conclusion that as to cases submitted on a general charge, all errors in the charge, including the entire failure to charge upon an issue, would be waived unless timely objection was made, or that there was an option to either object as provided in article 2185 or request additional special charges or instructions as provided in articles 2186 and 2188, it nevertheless could not have extended that holding to include cases submitted on special issues without nullifying the above-quoted provision in article 2190.

scribe the necessary requisites of requests' for special issues as to show that an objection to the failure to submit same cannot serve the purpose of such request. Of such cases may be mentioned St. Louis & S. W. R. Co. v. Preston (Tex.Com.App.) 228 S.W. 928; Modern Woodmen of America v. Yanowsky (Tex.Civ.App.) 187 S.W. 728; Palmer v. Guaranty State Bank (Tex.Civ.App.) 292 S.W. 953; McBurnett v. Smith & McCallin (Tex.Civ.App.) 286 S. W. 599; Morris v. McSpadden (Tex.Civ. App.) 179 S.W. 554; Hall v. Johnson (Tex. Civ.App.) 225 S.W. 1110; Fresnos Land & Irr. Co. v. Box (Tex.Civ.App.) 233 S.W. 369.

Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920, 921, is good authority for the proposition that objections and requests cannot perform the same function. In that case appellants had objected to certain instructions without stating the grounds of such objections. They also requested the giving of certain special charges designed to, and which no doubt would have been sufficient to, obviate the defects in the charge. The objection having been held inadequate to serve the true purpose of objections, the court was then called upon to say whether there was error in the refusal of the court to give the requested special charges. It was held that the waiver of defects in the charge resulting from the failure to make proper objections could not be indirectly avoided by sustaining assignments of error complaining of the failure of the court to give the requested special charges. It was said: "To reverse and remand a cause because the court refused a special charge which is inconsistent with the court's charge, which is not objected to, *is to give the special charge the status or effect of an objection to the court's charge.*" (Italics ours.) Thus it was argued that a construction of the statute that would permit requests for special charges to take the place of proper *objections* would have the effect of causing the statute to "become a dead letter and its wholesome purpose dissipated." Would not the converse be just as true, that to permit objections to take the place of the required requests for the submission of special charges or issues would have a like effect?

It is to be observed that in Isbell v. Lennox, supra, the point decided was expressly confined to a situation where the requested special issues were inconsistent with, and contradictory of, the court's charge. How would the same reasoning employed in the decision apply to a situation where the charge of the court or the special issues were correct as far as they went, but there was simply an omission of an issue? In such case, the request for the submission of the omitted issue naturally could not be inconsistent with or contradictory of the charge or issues proposed to be given, or submitted by the court. Quite plainly, if the case was being submitted on special issues and each issue the court was submitting was fully and correctly stated, there would be nothing *in the issues* to which any valid objection could be made. The mandatory words of article 2190 in such case would say: Now is the time, not to make an objection, but to request in writing submission of the omitted issue, upon penalty of being denied the right to complain on appeal of the failure of the court to submit it. Also, just as certainly as article 2188 has any application to a case submitted upon special issues, it would say to the interested party that a request for the submission of the omitted issue must to be sufficient be in such form that if the court refuses or modifies it, a record of such action may be made by indorsing "refused" or "modified" upon the issue requested and signing it by the judge. As Isbell v. Lennox, supra, held upon the facts before the court that the requests for charges could not be substituted for objections as a means of correcting charges and preventing a waiver of error, just so does the same logic compel the conclusion on the different state of facts like that last supposed that objections cannot be substituted for requests as the means of correcting an entire omission to submit issues and prevent a waiver of error.

Decisions wherein it has been held either in express language or by necessary implication that where the situation calls for requests for the submission of issues, objections will not suffice, may be listed as follows: F. C. Pennington Produce Co. v. Browning (Tex.Civ.App.) 293 S.W. 935; Texas Co. v. Ramsower (Tex.Com.App.) 7 S.W.(2d) 872; City of Houston v. Scanlan (Tex.Civ.App.) 16 S.W.(2d) 550; Frick v. International G. N. R. Co. (Tex. Civ.App.) 207 S.W. 198, 199; Olympia Towel Supply Co. v. Prade (Tex.Civ.App.) 22 S.W.(2d) 680; Archibald v. Bruck (Tex.Civ.App.) 264 S.W. 500; Palmer **v.**

Guaranty State Bank (Tex.Civ.App.) 292 S.W. 953; Hartford Acc. & Ind. Co. v. Frye (Tex.Civ.App.) 55 S.W.(2d) 1092; Velasquez v. International-Great N. R. Co. (Tex.Civ.App.) 36 S.W.(2d) 1070; Southern Surety Co. v. Solomon (Tex.Civ.App.) 4 S.W.(2d) 599; Modern Woodmen v. Yanowsky (Tex.Civ.App.) 187 S.W. 728; Wallace v. Johnson (Tex.Civ.App.) 39 S.W.(2d) 140; Donham v. Rugel (Tex.Civ.App.) 39 S.W.(2d) 627; Texas Emp. Ins. Ass'n v. Bradford (Tex.Civ.App.) 62 S.W.(2d) 158; Panhandle & S. F. R. Co. v. Burt (Tex.Civ.App.) 71 S.W.(2d) 390; Miller v. Fenner, Beane & Ungerleider (Tex.Civ.App.) 89 S.W.(2d) 506.

Of the cases wherein it is stated or implied that objections as applying to issues omitted from the submission in a case submitted on special issues may serve the same purposes as requests for submission of special issues, all those in point of time prior to the decision in Gulf, C. & S. F. R. Co. v. Conley, supra (only a few in number), may, we think, properly be disregarded as unimportant. It is believed the following is a complete list of the cases coming within the above description and decided since said time: El Paso Electric Co. v. Collins (Tex. Com.App.) 23 S.W.(2d) 295, 298, City of Brownwood v. Anderson (Tex.Civ.App.) 92 S.W.(2d) 325; Ferguson Seed Farms v. Ft. Worth, etc., R. Co. (Tex.Civ.App.) 69 S.W.(2d) 223; Richards v. Westmoreland (Tex.Civ.App.) 63 S.W.(2d) 715; Kansas City, M. & O. R. Co. v. Foster (Tex.Civ. App.) 54 S.W.(2d) 270; Gulf States Utilities Co. v. Grubbs (Tex.Civ.App.) 44 S.W. (2d) 1001; Continental Supply Co. v. Forrest E. Gilmore Co. (Tex.Civ.App.) 55 S. W.(2d) 622.

The following cases for some purposes to be regarded as belonging to the same list are listed separately for the reasons hereafter to be noted: Missouri, K. & T. R. Co. v. Long (Tex.Com.App.) 299 S.W. 854; Southern Cas. Co. v. Fulkerson (Tex.Com. App.) 45 S.W.(2d) 152; Morrison v. Antwine (Tex.Civ.App.) 51 S.W.(2d) 820, 822.

The decision which in point of weight as authority presents the greatest difficulty is El Paso Electric Co. v. Collins, supra. The question to all of which the opinion, except two short paragraphs, was devoted, was one involving the validity and effect of an ordinance. By one paragraph it was shown that certain special requested charges were not in such form and/or substance that they could properly be given. The

opinion then says: "Notwithstanding there was no error in the refusal of the trial court to give the special charges above discussed, still it was error for the trial court to refuse to submit proper issues of negligence on the part of plaintiff under the city ordinance above discussed, for the reason that the electric company duly and seasonably excepted to the main charge on account of its failure to submit such issues." In so saying, was it intended to overrule all the decisions hereinbefore listed which, as we have endeavored to show, establish the proposition that where requests for the submission of issues are required by article 2190, objections to the court's failure to submit such issue are not sufficient? Is it reasonable to ascribe to the court the intention to overrule its prior decisions without any discussion whatever. One reason, among others, which we think justifies the rejection of that view is that in lieu of any discussion of the question the court merely cited Missouri, K. & T. R. Co. v. Long (Tex.Com.App.) 299 S.W. 854. An examination of the Long Case shows that no consideration of an omitted issue was involved. On the contrary, the court was considering the refusal of the trial court to define or explain a legal term. At least ever since the decision in Robertson & Mueller v. Holden (Tex.Com.App.) 1 S.W.(2d) 570, if indeed the question was not certainly foreclosed by the decision in the Conley Case, there has never been any uncertainty or room for doubt that the failure of the court to define or explain a legal term when required to be explained or defined is to be reached by an objection and that to request a definition or explanation is unnecessary. The failure to accompany a submitted issue with a definition or explanation of a legal term employed in the statement of the issue and which requires definition or explanation to enable the jury properly to pass upon the issue is a defect or incompleteness in an issue submitted. In the Conley Case, it was plainly declared that in such a situation unless there was a proper objection the error would be waived. That is entirely beside the question we are now considering which, to reiterate, relates to the complete omission to submit an issue. It would seem to be wholly unreasonable that the Supreme Court intends in its language above quoted to overrule, or declare an exception to, the proposition which, as we said in the beginning, is supported by 125 or more cases to the effect that an issue not submitted and not requested will be waived. It is equally

unreasonable to credit the intention that where the statute (article 2188), as construed by the cases cited, requires that requests for the submission of issues be in such form that they may be given or refused by a simple indorsement thereon, yet nevertheless, as an alternative, improperly stated special issues requested to be given and which cannot be given will serve as proper requests. It is a more reasonable view, we think, that the court, engrossed with what it considered the main question in the case, failed to distinguish the situation dealt with from one like that in the Long Case cited as an authority, or from one like that involved in Robertson & Mueller v. Holden, supra.

Most of the other cases cite the Collins Case. Some follow the dicta in Morrison v. Antwine, supra, and express the view not that a request is unnecessary, as apparently held in Gulf States Utilities Co. v. Grubbs, supra, but that an objection is a sufficient request. Southern Cas. Co. v. Fulkerson, supra, involved the "form" of an issue given. There was therefore not involved any omitted issue. It was simply held that there were no objections nor requests, which, of course, disposed of the question, whatever it was. The implication, if any, that objections alone would suffice, was therefore dicta.

In Morrison v. Antwine, supra, the court said: "The appellant not only objected to the charge as given on the ground that it failed to submit such issue, but in his written objections he requested the court to submit the issue." It could not properly be said, of course, that there is any hard and fast rule which requires that an otherwise proper request for the submission of an issue is rendered not so by simply including an unnecessary objection. The case does hold that the objection to the failure of the court to submit an issue is a request for its submission, a proposition which appeals to us as being debatable in the absence of any authority, but which is, we think, entirely foreclosed to the contrary by numerous cases we have cited.

Finally viewing the purpose of the statutes which have a bearing on the question under consideration there seems to us to be plainly manifest, the intention to require counsel in cases to render more effective assistance to the court, to the end of avoiding errors in trials and the consequent overturning of judgments. Certain duties are imposed upon the judge. Certain responsibilities are imposed upon the parties to be discharged by their counsel to the end that not all failures of duty enjoined upon the judge shall necessarily result in an invalid judgment. Two distinct provisions were made with reference to utilizing the services of juries. One seeks to correct, or avoid the consequences of, errors in charges given or issues submitted. The other has the same purpose with reference to issues not charged upon or attempted to be submitted. The one employs objections; the other employs requests; each are made prerequisites to avoid the waiver of errors. If effect be given to such purpose in accordance with the law, the result, in our humble opinion, will be that the practice of law will be simplified rather than rendered complex. Such a construction is not "technical," but gives effect to the intention of the law, and is far easier of observance than if the statutes be given the construction contended for in the motion for rehearing. The motion for rehearing will be overruled.