**BOWDEN v. JONES et al.**

No. 1954.

Court of Civil Appeals of Texas. Eastland.. Dec. 8, 1939.

Rehearing Denied Jan. 12, 1940.

Webster Atwell, of Dallas, and Scarborough & Ely, of Abilene, for appellant.

Wagstaff, Harwell, Douthit & Alvis, of Abilene, Coombes & Andrews, of Stamford, and George Connor, of Fort Worth, for appellee.

FUNDERBURK, Justice.

Mrs. Nina Woodall Bowden (joined by her husband, A. F. Bowden, since deceased) by deed dated March 1, 1937, executed in performance of a sales contract of date February 19, 1937, conveyed to Robert L. Atchison, for a cash consideration of $2,500, a quarter section of land (actually 166.89 acres), situated near Avoca in Jones County, Texas, except a one half mineral royalty interest and "the sole and exclusive right and authority [of the grantor] to prospect for, produce and market oil, gas and other minerals on, in, under and from the west ½" of the tract "which said undivided one half royalty interest in the entire tract and the exclusive right to develop as to the west one half of said tract of land, with the right of ingress and egress for such purposes, are hereby reserved to the grantor Nina Woodall Bowden" etc. The $2,500 consideration was paid by A. V. Jones and H. R. Stasney, geologists, the title being vested in said Atchison as trustee for them, a fact, however, at the time unknown to the grantors. On March 10, 1937, Atchison conveyed the land, subject to the exceptions stated, to Jones & Stasney, who, of date March 24, 1937, executed an oil and gas lease upon the east one half of the quarter section (83.5 acres) to Iron Mountain Oil Company. By instrument of the same date, March 24, 1937, Nina Woodall Bowden (joined by her husband) leased the west ½ of the quarter section to Iron Mountain Oil Company (the same lessee) for a consideration (in addition to royalty) of $417.50 cash, and the obligation of said lessee "to pay lessor a further bonus in a sum equal to $30 per acre payable out of ¼ of ⅞ths of the first production of oil or gas obtained under this lease from the above described 83.45 acres of land if, as and when produced." Each of said leases as to the specific East ½ and West ½, respectively, of the quarter section, also included "all of the land and interests in the land owned by lessor adjoining the above described land and therewith forming a single tract, whether owned or claimed by inheritance, deed, gift,

limitation or otherwise." By separate assignments dated June 30, 1937, Iron Mountain Oil Company conveyed an undivided one half interest in both said leases to Humble Oil & Refining Company.

After the filing of this suit (on February 9, 1938) A. F. Bowden died. According to plaintiff's first amended original petition, parties to the suit ·were Nina Woodall Bowden (a feme sole), plaintiff, and "A. V. Jones and H. R. Stasney, individually, doing business as a partnership under the firm name of Jones & Stasney; W. G. Webb and W. Graham Webb, Jr., individually, doing business as a partnership under the firm name of Webb & Webb; Robert L. Atchison; and Iron Mountain Oil Company", defendants. The nature of the suit is an action to cancel, because of alleged fraudulent representations: (1) The deed from plaintiff to Robert L. Atchison, (2) the deed from the latter to Jones & Stasney, and (3) the oil and gas lease from the latter to Iron Mountain Oil Company. (As to the latter, no fraudulent representations were charged but cancellation sought upon averments that said company took with notice.)

As an offer to do equity, plaintiff alleged that she "tenders to the defendants any and all sums due them to the extent of the money advanced for the purchase of said property. In this connection, plaintiff asks for a full and complete accounting and asks that the defendants Jones & Stasney be required to account to this plaintiff for the lease money and royalty payments which have heretofore been made to the defendants Jones and Stasney and to account for whatever sums may be due. This plaintiff offers to do equity and agrees to reimburse Jones and Stasney for the $2,500 paid out by them, less such sums, if any, as they may have collected upon lease sale and royalty payments. This plaintiff here now tenders the same and agrees to fully repay defendants Jones & Stasney the total amount of $2,500 which they have paid for the property and which this plaintiff conveyed to their dummy, [R. L. Atchison]."

Upon sustaining a general demurrer of Webb & Webb and refusal of plaintiff to amend, the court dismissed the case as to said defendants. In response to a motion praying such action, the court instructed a verdict for Iron Mountain Oil Company. Robert L. Atchison was eliminated from the suit by dismissal at the request of plaintiff.

As between plaintiff and ·defendants Jones & Stasney the trial was by jury. By special verdict the jury found (1) that Jones and Stasney directed Robert L. Atchison to act as their agent for the purchase of the land; (2) that Jones and Stasney wrote the letter of February 10, 1937 to James·Blair Baker, Jr., with the intention that the contents should reach the plaintiff. (3) That the statement in the letter that "there is not sufficient control in the area to definitely work surface or subsurface geology" was not false. (4) That Jones and Stasney made the statement inquired about in special issue No. 3, to induce the plaintiff to· enter into a contract to convey her property to Robert L. Atchison. (5) That plaintiff relied upon the statement of Jones and Stasney inquired about in special issue No. 3 in entering into the contract to convey her property to Robert L. Atchison. (6) That plaintiff would not have contracted to convey her property to Robert L. Atchison if the statement of Jones and Stasney inquired about in special issue No. 3 had not been made. (7) That at the time plaintiff entered into the contract to convey her property to Robert L. Atchison, said property was worth more than she received for it.

From the judgment for defendants, Jones & Stasney, plaintiff has appealed.

As an answer to all of appellant's propositions, appellees urge a counter proposition by which they endeavor to show that the court should have instructed a verdict for them. The theory thus advanced is, of course, that had the court done so, then the matters complained of by appellant would have been rendered harmless or immaterial.· The counter proposition must be overruled, because not presenting a question of fundamental error, it lacks the support of a necessary assignment of error (cross assignment of error). The counter proposition is grounded upon the view that the failure of the court to instruct a verdict for appellees was erroneous. If appellees by any proper proceeding invoked a ruling of the court upon the question of their right to an instructed verdict, the ruling of the court, whatever it was, is not made the ground of error in any cross assignment of error. "If", as this court has had occasion to conclude, "it becomes necessary for an appellee or a defendant in error to invoke the authority of the appellate court to determine the existence of error, not funda-

mental, in any ruling, action or other part of the proceedings of the trial court whether to obtain further relief in a judgment awarding partial relief, or to sustain the judgment in his favor upon some other basis, or for some other reason than that upon which it was predicated by the trial court, then it is necessary to present such matters by cross-assignments of error." Miller v. Fenner, Beane & Ungerleider, Tex.Civ.App., 89 S.W.2d 506, 509, and authorities cited. See, also, Texas Co. v. Graham, Tex.Civ.App., 107 S.W.2d 403; A. H. Belo Corp. v. Blanton, Tex.Civ.App., 126 S.W.2d 1015.

■ If it be granted that the court should have instructed a verdict for appellees, we are not informed by the counter proposition nor by any cross assignment of error (there being no cross assignments of error) whether the failure to do so was the result of some duly invoked ruling or of mere inaction. We think if appellees failed to procure a ruling upon an asserted right for an instructed verdict and failed to assign error upon a wrong ruling, if any, and without objection permitted issues to be submitted to the jury, they thereby waived any error in such proceeding. In effect, they thereby consented that the judgment to be rendered should be based upon the verdict, subject, of course, to the right to procure a review of fundamental errors and other assigned errors. A good analogy, it would seem, is to be found in the erroneous admission of evidence. To authorize the appellate court to review such action, the complaining party must, by timely objection, have procured a ruling upon the admissibility of the evidence.

Recognizing that some courts have held that a proposition, not purporting to be an assignment of error, may, if it contains the essentials of an assignment of error, be treated as such, we find upon examination that the cross assignment of error in question not only fails to specify the ground (rulings or actions) on which appellant relies, but does not direct "the attention of the Court to the error [alleged wrong ruling or action of the court] complained of" as required by R.S. 1925, Art. 1844, Vernon's Ann.Civ.St. art. 1844. True, the counter proposition does, perhaps, imply the action (more accurately perhaps, inaction) of the court as to instructing a verdict for appellees, but so far as the language of the counter proposition discloses such implied action may have been entirely proper in view of some other undisclosed ruling or action, the error wherein, if any, has been waived by failure to make it the ground of any assignment of error. For example, let us suppose that appellees duly presented a motion to the court to instruct a verdict for them and that the court overruled same, thereby determining against appellees the very question of their right to such instructed verdict. Can it be doubted that the error, if any, in such ruling would be waived by the failure of the injured party to present it for review by an assignment of error? If not, then the mere failure of the court to instruct a verdict would in itself be no error at all. The mere omission of the court to instruct a verdict may result from the action of the court in overruling a motion for an instructed verdict, a demurrer to the evidence, or at least the denial of a request for an instructed verdict, and whether erroneous or proper, would depend entirely upon whether the preceding action or ruling was erroneous or proper.

Proceeding now to a consideration of the appellant's eight propositions, urged as grounds for reversal of the judgment, we find that the first seven of said propositions relate to the refusal of the court to submit requested special issues. The other relates to the action of the court in overruling objections to the special issues which were submitted. From this statement it would appear, not unnaturally, that the questions for decision are not difficult. They have, however, been found to be unusually difficult, due mainly, if not altogether, to the nature of plaintiff's pleadings. In such pleadings no distinction seems to have been recognized as between conclusions of fact which constitute issues and facts which are but evidence of such issues or mere elements of issues and/or arguments supporting issues. In view of this condition we think we may best express our views, upon most of the propositions urged by considering the evidence in the light of particular allegations in the pleadings, rather than by taking up the several propositions separately.

Appellant alleged: "* * * that said defendants Jones & Stasney had *worked out a structure* in Jones County, Texas which, among other lands, *included the land of the plaintiff* herein; that said defendants * * * *had discovered said structure and knew that it was there* * * * That after said structure had been *worked out* and was *well known* to

628

the defendants \* \* \* they sought to assemble the acreage \* \* \* Jones & Stasney wanted the property because it was situated on an oil structure \* \* \* plaintiff \* \* \* did not know that it was situated on an oil structure \* \* \* defendants had worked the geology upon the land in question and *had determined that there was a structural condition favorable for the production of oil* upon which the plaintiff's land was situated. \* \* \* Defendants well knew that a structure did exist \* \* \* and were at that time assembling and seeking to assemble sufficient acreage in the neighborhood of the plaintiff's land for the purpose of exploration of oil and gas \* \* \* Defendants had done considerable geological work upon said land and in the immediate vicinity and *had determined that a structure did exist there* and were in the process of assembling sufficient acreage *at that time* for exploration of oil and gas upon such property. \* \* \* the fact that said land was located on an oil and gas structure was to this plaintiff unknown but was *well known* to Jones & Stasney when they employed Webb & Webb to try to buy it for them. \* \* \* They had worked out the geology on said area and *had discovered that a structure was situated in the vicinity of plaintiff's property. \* \* \* was in truth and in fact a part of said structure \* \* \* knew plaintiff's land was located on a structure \* \* \*.*" (Italics ours)

On February 9, 1937, James Blair Baker, Jr., wrote to Jones and Stasney a letter as follows:

"A good friend of mine owns the Northwest quarter of Section 196, BBB&C Co. Survey Jones County, Texas, about two miles northeast of Leuders. It is in the name of Nina Woodall. Will you please tell me immediately how this looks structurally and tell me what you would do with the property if it were yours. I have no interest in it other than it is owned by a good friend, so any information you can give me will be appreciated.

"I would also like to know if you have heard from Roeser & Pendleton and, if so, what are their plans concerning the well by the Newell lease.

"And to you Mr. Jones, where is my $27.00?

"Best regards to you both.
"Sincerely yours,
"James Blair Baker, Jr."

In reply to said letter, Jones & Stasney, by H. R. Stasney, replied on February 10, 1937, as follows:

"In regard to the northwest quarter of Section 196, BBB&C Co. Survey Jones County, Texas. The Marland Oil Company drilled a dry hole to 2500 feet one and a half miles north and did not have any shows of oil or gas.

"There is not sufficient control in the area to definitely work surface or subsurface geology. There is no production near the tract but several other dry holes as you will notice on the Jones County map.

"If this property was ours (not being farmers) we would probably sell it and retain a little of the royalty.

"Dave Dean was in here the other day and they will drill the well on their tract giving us a direct west offset. They have no doubt moved in by this time. The Elevation of their location is 1718.0. Roeser and Pendleton have agreed to help them.

"Brother Jones is enclosing his check for the sum of twenty-seven dollars. He said do not spend it for whiskey better donate it to the Salvation Army.

"Come see us Baker.
"With best wishes, we are
"Yours truly,
"Jones & Stasney
"By H. R. Stasney."

It is clearly to be seen that if the allegation so many times repeated as shown by the foregoing quotation from plaintiff's petition, was true, to the effect that at the very time Jones & Stasney wrote said letter they had worked out the geology *and knew* of the existence of a structure, then their statement that "there is not sufficient control in the area to definitely work surface or subsurface geology" was a false statement of a matter of fact. Such falsity was alleged as also perhaps all other elements essential to show a cause of action for cancellation because of fraud, including as two essential elements thereof the fact that such statement was made and the fact of its falsity. There being no issue of fact as to the making of the statement, and, therefore, no necessity, or even propriety, of submitting it to the jury, the issue of its falsity was submitted and found that the statement was not false. A careful reading of all the evidence convinces us that no other conclusion was warranted. The fact, if not conclusively established by

the evidence, was supported by the overwhelming weight and preponderance of the evidence, that Jones & Stasney did not know of the existence of a structure. The evidence showed conclusively, we think, that Jones and Stasney had no knowledge of any facts supporting a definite opinion or theory of the existence of a structure in the vicinity of the land in question not known to Baker, the addressee of the letter, and not known by the writers to have been known by Baker. The truth of the statement made in response to the inquiry as to how the land looked structurally was abundantly proved, and hence its falsity, to say the least, was not proved. It results, as to any cause of action alleged, of which the knowledge of Jones & Stasney of the existence of a structure was a material fact, no right of recovery by appellant was shown and the judgment was proper.

 It is doubtful, we think, whether any ground of recovery was alleged existing independently of the fact that Jones and Stasney knew of the existence of a structure favorable for the accumulation of oil or gas. As to the correspondence already noted between James Blair Baker, Jr., and Jones & Stasney, plaintiff further alleged that Baker by his letter "made inquiry as to *what the prospects were* and in reply to that letter Jones & Stasney represented to him * * * that they knew of *no oil development* in that territory * * Jones & Stasney were then and there *planning* and *conceiving* and *promoting the acquisition of the acreage covering the structure in question* * * * were at the time *assembling and seeking to assemble sufficient acreage in the neighborhood of the plaintiff's land for the purpose of exploration of oil and gas* * * * that the representations made to Blair Baker, Jr. by Jones & Stasney that there was *no development nor expected development in said area* for oil and gas purposes was false" etc. (Italics ours) The representation thus alleged is quite obviously a different representation from the one that "There is not sufficient control in the area to definitely work surface or subsurface geology." However, it is reasonably clear from the pleadings that the alleged representation to the effect that there was no development, nor expected development, was claimed to have been made in the letter itself. As a matter of law, in our opinion, the letter of Jones & Stasney to Baker did not contain a representation to the effect that there was

no development nor expected development. Aside from the letter there was no other evidence of any such representation. No issue relating to such a representation was submitted to or found by the jury, and, of course, very properly so.

Appellant further alleged "* * * that the representations contained in the letter of the defendants * * * to James Blair Baker, Jr. hereinbefore set out are ambiguous and misleading and were made designedly, deceptive and misleading and created upon the plaintiff an *impression* that her land *was not situated upon any structure from which there was a possibility of production of oil and gas.* That the defendants knew and intended to create such false *impression* upon the plaintiff * * * that regardless of the literal truth of the statement in the letter of Jones & Stasney to the effect that there was no definite control the expression was used with the intention of causing the plaintiff to believe that so far as the defendants Jones & Stasney knew there was no possibility so far as they knew for the development of oil and gas, whereas in truth and in fact the words 'definite control' were used with the express purpose and intention of misleading and deceiving the plaintiff and causing her to believe that the effect of this statement meant that the property had no indications that it would produce oil or gas. This innuendo was misleading and false as shown by the fact that Jones & Stasney were themselves the prospective purchasers of the land in question and their conduct was inconsistent with the entire tenor of said lease." (Italics ours)

The part of appellant's pleadings just quoted was the basis of the special issues requested and refused. It is our conclusion that the "representations contained in the letter" in question were not "ambiguous" or "misleading." There was no evidence to support a finding to the effect that they "were made, designedly, deceptive and misleading." While appellant did testify to the effect that three paragraphs of the letter which she saw "created upon the plaintiff" as alleged "an impression that her land was not situated upon any structure from which there was a possibility of production of oil and gas" there was no evidence of any facts to justify such impression, to say nothing of evidence of design on the part of appellees to produce that impression. The only reasonable inference from all the evidence is that Baker

knew and Jones & Stasney knew that he knew every geological fact known to them to support a theory of the probable existence of a structure in the area, except, perhaps, some of those truly stated in the letter. The letter supplied to Baker up-to-date information as to the fact evidences of the existence of a structure. The undisputed evidence shows that Baker received no false impression from the letter. Baker's letter did not, we think, call for expression of any opinion. Knowing that Jones & Stasney knew what Baker knew a year or so before regarding evidences of a structure, Baker, on February 9, 1937, by the letter, merely asked them to "please tell me immediately how this looks structurally." Baker testified to the effect that he was merely asking them to bring him up-to-date. In addition, instead of asking their opinion as geologists, he requested them to "tell me what you would do with the property if it were yours." There was no evidence that any of the information given in compliance with the request was not true. There was an abundance of evidence tending to show that it was true. Furthermore, there was no evidence that at the time the letter was written Jones & Stasney were assembling or blocking acreage for a test or that they contemplated doing so.

A reading of all the evidence leads inevitably to the conclusion that but for the letter of Jones & Stasney to Baker this controversy would never have arisen. It was entirely legitimate for appellees to purchase the land through a trustee. The purchasers were under no duty to disclose to the seller any information they may have had affecting the value of the land. Had appellees delayed answer to the Baker letter until after the purchase of the land, there would have existed not a single fact, to say nothing of all the fact elements of a cause of action, upon which to predicate the claim involved in this suit. That much may perhaps be conceded. Having previously begun negotiations for the purchase of the land and in order to acquire it at a price unaffected by a speculative theory of theirs regarding the possible existence of a structure in the vicinity and having determined to acquire the land in the name of another in order to accomplish that result, were appellees upon receipt of Baker's letter confronted with two absolute alternatives (1) not to answer the letter, or (2) to disclose their

highly speculative theory based upon facts known to Baker as well as themselves? This is the real question in the case. If they answered the letter their duty was (1) to answer truly, and (2) answering truly, to do so in such way as to imply no material false representation. Appellees answered Baker's letter truly. No material *fact* known to them was withheld. The facts as they were truly stated implied no false representation of any other *fact*. Had appellees as geologists been requested to give an opinion, although they would have been under no duty to do so, yet if they did so, would have had the duty to give a true or real opinion. A purported opinion contrary to their real opinion may have constituted a false representation, the same as a false representation of a fact. Having truly answered the matters of fact inquired about, were appellees under the duty to volunteer the statement of a mere theory or guess, which, as honorable men, they were unwilling and never did put forth as a definite professional opinion? We do not think so. It seems to us that only upon the untenable theory that before purchasing the land appellees were under the duty to disclose their theory to the seller, could it be said that the failure to state it in the letter created a false implication, whether of fact or opinion.

Let us suppose that appellees had given Baker the benefit of their theory just as the undisputed evidence shows they did afterwards give it to Neely when they made the contract with Iron Mountain Oil Company to drill a well upon a block of leases to be furnished by them at an agreed price. And further suppose that because thereof an otherwise advantageous sale of the land had been declined. Then suppose the mere guess involved in the theory had proved to be wrong. Would appellant have had a cause of action against appellees for damages based upon such theory of a false representation resulting in a loss of the advantages of the sale? Clearly, we think, appellant would have had no right to rely upon the statement of such a theory as being a material representation and the basis of fraud. Yet, but for the failure to disclose such a theory it is quite evident this suit would not have been brought. The only reasonable inference from the evidence is that Neely, for his company, the Iron Mountain Oil Company, took a gamble that a particular one of three to six different interpretations of well known geologi-

cal data was correct. Had he merely performed his original contract obligations no oil or gas would have been discovered and the mineral value of the lands would have remained merely nominal or speculative to the extent of other lands in Jones County not known to be situated upon structures favorable for the accumulation of oil or gas. About 300 feet above the "Saddle Creek lime" was found a marker inconclusively indicating a "high." The Saddle Creek formation when reached was found to be high. Then for the first time was the mineral value of the land in suit and lands in the same vicinity affected by real factual evidence of favorable geological structure. Such evidence was not conclusive but sufficient to enable Iron Mountain Oil Company to sell to the Humble Oil & Refining Company a one half interest in the block of leases, Iron Mountain Oil Company agreeing to drill the test well to a greater depth than the original contract provided. Finally the difference between the success that resulted and the failure that might have resulted was the narrow margin represented by lowering the drilling tools into the well for just once more before abandonment. The production was obtained from a horizon which had never been known to produce in Jones County and was generally believed to be unproductive. Appellant reserved a one half mineral royalty (not less than 1/16th of the total production) in the whole quarter section of land and all the minerals except a one half royalty interest in one half thereof. She leased her land for a substantial cash bonus in addition to $30 per acre to be paid out of 1/4 of 7/8ths of oil if, as and when produced. In order to comply with their obligation to Iron Mountain Oil Company to furnish the contemplated leases necessary for making a test, appellees were required to assume payment of the contingent $30 per acre payment. Presumably without appellees incurring such obligation no test of the area would have been made and no real mineral value of the land would have been discovered. Appellant's offer to do equity in its last analysis is not to return the $2,500 paid by appellees for the land, saying nothing of the taxes assumed and presumably paid for the year 1937, but to take full advantage of the exploratory operations and the values resulting from the efforts of appellees at no little cost and expense, by charging them with the consideration received for the lease and the royalty received thereunder and crediting same against said $2,500. It seems to us it would be inequitable under the circumstances of this case to decree a cancellation, even if there were no other obstacles to such action.

Our conclusions as above expressed, we think, dispose of all appellant's propositions based upon the contention that the court erred in refusing to submit requested special issues. Requested special issue No. 2, had it been given, would have inquired of the jury whether by a preponderance of the evidence they found that the representations of the defendants contained in the letter in question "were true or false." It would have been error to submit the question as an issue because there was no issue as to whether the representations, if any, were true. The issue was, Were they false? Under the proposed submission had the jury been unable to say *from a preponderance of the evidence that* they were true, would necessarily have had to answer that they were false, thus improperly placing the burden of proof.

Proposition No. 8 reads as follows: "The trial court erred in submitting special issues 3, 4, 5, and 6 to the jury and in not sustaining the plaintiff's objections and exceptions thereto for the reason that said special issues limited the contents of the letter of February 10, 1937 to the single sentence set out in the court's charge, whereas the misrepresentation is covered by the letter as a whole and the jury should have been instructed to take the letter as a whole to determine the truth or falsity thereof." There was no limitation of the letter as evidence. According to the pleadings the letter contained more than one representation alleged to be false. Each alleged representation constituted an element in a separate ground of recovery. The burden was upon appellant if the court omitted to submit proper issues to request their submission upon penalty of a waiver of error in the failure to do so. The fault could not be reached by objection to the issues that were given. Harris v. Thornton's Dept. Store, Tex.Civ.App., 94 S.W.2d 849.

Upon the whole it is our conclusion that the judgment of the trial court should be affirmed and it is accordingly so ordered.